JOURNAL ENTRY and OPINION
{¶ 1} Appellant Jermaine Levy appeals from his conviction in the Cuyahoga County Court of Common Pleas for escape and forgery. Levy assigns the following errors for our review:
 {¶ 2} "I. The trial court denied the defendant due process of law when it overruled his motion to dismiss the indictment pursuant to Ohio Revised Code 2963.30 and 2941.401."
 {¶ 3} "II. Defendant was denied his constitutional right to a public trial when the court excluded the defendant-appellant's children from the courtroom."
 {¶ 4} "III. The trial court denied the defendant-appellant due process of law when it denied the defendant-appellant's Rule 29 Motion with regard to count II (forgery)."
 {¶ 5} "IV. The trial court denied the defendant-appellant due process of law when it denied the defendant-appellant's Rule 29 Motion with regard to count I (escape)."
 {¶ 6} "V. The trial court denied the defendant-appellant due process of law when it specifically instructed the jury as to how to judge the credibility of law enforcement officials and correction officers."
 {¶ 7} "VI. The trial court denied the defendant-appellant due process of law when it specifically instructed the jury as to how to judge the credibility of defendant's testimony."
 {¶ 8} Having reviewed the record and pertinent law, we affirm the judgment of the trial court. The apposite facts follow.
 {¶ 9} On April 30, 2001, the Ohio Cuyahoga County Prosecutor's Office lodged a detainer against Jermaine Levy with the Warden at the Lewisburg Penitentiary in Pennsylvania. Ohio Codified the Federal Interstate Agreement on Detainers (I.A.D.) in R.C. 2963.30.[1] The prosecutor charged Levy with attempting to escape and forgery while in the custody of the Cuyahoga County jail on an unrelated corruption charge. Before we develop the facts relative to those charges, it is important to focus on the facts relative to Levy's claim that under Ohio's I.A.D., the time had expired to bring him to trial on those charges.
 {¶ 10} In substance, Article III and IV of R.C. 2963.30 speak to the right of a detainee to have a speedy trial. Article III defines the procedure when the detainee initiates the process for trial and sets the speedy trial time at one hundred eighty days. The detainee must serve notice on both the prosecutor and the court, which must contain a certification from the warden stating the terms of the detainee's incarceration. Article IV sets forth the procedure to be followed when the prosecutor initiates the detainer procedure. Under Article IV, the time for trial starts to run one hundred twenty days after the party arrives in the requesting state.
 {¶ 11} Levy had been transferred to the Cuyahoga County [jail] from Lewisburg Penitentiary on the unrelated charge of corruption, when he attempted to escape the Cuyahoga County jail by assuming the identity of another inmate. Levy returned to Lewisburg before his indictment on the escape and forgery charge; consequently, he knew of the possibility of those criminal charges.
 {¶ 12} On February 8, 2001, and April 16, 2001, Levy attempted to invoke his rights under the detainer laws by filing his final disposition request with the Warden. The Warden failed to respond to the February request but did inform him on April 19, 2001 that no detainer existed for him from Ohio.
 {¶ 13} The Cuyahoga County Grand Jury indicted Levy on March 30, 2001. On April 16, 2001, Levy filed a pleading with the Clerk of Cuyahoga County Common Pleas Court invoking his speedy trial rights under both R.C. 2963.30 and R.C. 2941.401.[2] We note at the outset that R.C. 2941.401 does not apply; Levy was not in a correctional institution of this state when he invoked his speedy trial rights. We read R.C. 2941.401 to apply when the prisoner is in prison in Ohio and seeks to have untried charges resolved in Ohio.
 {¶ 14} The clerk time-stamped Levy's request on April 18, 2001. Levy's pleading does not show proof of service to the prosecutor's office; although Levy testified at his speedy trial hearing that he served the prosecutor's office on April 8, 2001, which the prosecutor denies receiving.
 {¶ 15} On April 30, 2001, the prosecutor's office filed an I.A.D. request for temporary custody of Levy with the Warden at Lewisburg. On May 10, 2001, Levy declined to complete the form; he informed the Warden that he did not want to jeopardize his speedy trial rights. However, on July 26, 2001, he did complete the form.
 {¶ 16} On September 12, 2001, Levy was returned to Ohio. On December 5, 2001, he waived his speedy trial rights. On December 18, 2001, Levy filed his motion to dismiss the indictment under R.C. 2963.30, which the trial court denied. His trial for escape and forgery began on February 11, 2002.
 {¶ 17} At the trial, the State's first witness, corrections officer Andrea Averyheart, testified at 11:00 p.m., he collected the inmates designated for release, which included the release of James Evans. He called the name James Evans and a male responded. The inmate identified himself as James Evans and responded to several personal questions. Averyheart stated the photograph on the floor card did not match the inmate who responded. The inmate then responded to Averyheart that the photograph was not him.
 {¶ 18} Averyheart took him to an area for him to change into his civilian clothing. After the inmate dressed, Averyheart inquired further asking more personal questions. The inmate could not respond to information such as Evans' father's name or whether he had sisters or brothers.
 {¶ 19} Averyheart requested verification from Scientific Invest-igation Unit (SIU) and SIU responded the card belonged to James Evans. Averyheart notified his corporal that an escape had been attempted.
 {¶ 20} Averyheart testified that ultimately the inmate was identified as Jermaine L. Levy. The State called several other witnesses that confirmed Averyheart's testimony.
 {¶ 21} Detective Dave Schilling investigated the case and learned that co-defendants Landon Nicholson and Willie Harris had secured the bond for the release of a James Evans. Schilling also discovered that Landon Nicholson had visited Levy before the incident.
 {¶ 22} The State rested, and Levy called three witnesses who had no knowledge of the events. Levy testified while waiting to be transported to Lewisburg, an officer approached him and told him to get dressed. After getting dressed, a card was shown to him and he was asked if he knew the person in the picture. Averyheart then took him downstairs and placed him in the dressing room while he went to an adjacent room. When he returned, Averyheart told Officer Doniver that Levy said his name was James Evans. Levy denied telling Averyheart his name was James Evans; he told him earlier the picture on the card was not him. Afterwards, the supervisors were called; they placed him in a holding cell. Days later he was transported back to the federal prison.
 {¶ 23} Levy also stated he wore a size forty-four inch waist pants, while the person he is accused of impersonating is about 170-180 pounds and wore a thirty-four inch waist pants. Additionally, he stated he had never met Landon Nicholson, but heard he was a paralegal. He stated he might have come in contact with Nicholson while seeking legal assistance about his case.
 {¶ 24} Finally, Levy stated the officers are trying to cover up for almost releasing the wrong person, a person who had several high profile cases.
 {¶ 25} At the end of trial, the jury returned verdicts of guilty on both counts of the indictment. The trial court sentenced Levy to three years in prison on the escape charge and one year on the forgery count. Both sentences were to be served concurrently. However, the instant sentences were to be served consecutively to the sentences he was then serving. Levy now appeals.
 {¶ 26} In his first assigned error, Levy argues the time to bring him to trial under R.C. 2963.30, Article III, expired in October 2001. We disagree.
 {¶ 27} We note the protections and rights afforded a prisoner under Article III of the I.A.D. are applicable only if there exists an "untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner * * *"[3] Similarly, Article IV entitles a prosecutor to seek custody of "a prisoner against whom he had lodged a detainer * * *"[4] "Thus, the provisions of the I.A.D. aretriggered only when a prosecutor files charges against a personserving a term of imprisonment in another state and files adetainer with the official having custody of theprisoner."[5] (Emphasis added.)
 {¶ 28} The crucial role of a detainer in activating these protective provisions was thoroughly delineated in People v.Newton,[6] where the court considered the applicability of Article III of the I.A.D. to charges not listed in the detainer filed against the defendant.[7] "There we held that thedismissal remedy for violations of the speedy trial provisions ofArticle III of the I.A.D. applies only to those charges thatunderlie the detainer filed against the prisoner.[8]Charges as to which no detainer has been filed are simply notsubject to the speedy trial provisions of Article III of theI.A.D."[9] (Emphasis added.)
 {¶ 29} In United States v. Mauro,[10] the seminal case in this area of law, the court held because the Government never filed a detainer against Mauro and Fusco, the Agreement never became applicable and the United States was never bound by its provisions. The Court of Appeals therefore erred in affirming the dismissal of the indictments against the respondents.[11]
 {¶ 30} Consequently, the issue here is when does the speedy trial time under Ohio's I.A.D. law begin to run or become jurisdictional. In State v. Mourey,[12] the Ohio Supreme Court held it runs when the inmate substantially complies with the requirements of Ohio's I.A.D. law. In Mourey, Article III(a) and (b) of R.C. 2963.30 were at issue. The California inmate filled out an interstate detainer form in California containing information regarding his whereabouts and filed it with his California Warden. Mourey requested speedy and final resolution of the charges pending against him in Franklin County, Ohio. The parties stipulated the California Warden sent the form by certified mail. The Franklin County prosecutor received the form on January 17, 1990, beyond the one hundred eighty day speedy trial. The prosecutor needed further information and did not bring Mourey to trial until July 18, 1990. The trial court refused to grant Mourey's motion to dismiss under R.C. 2963.30. The Court of Appeals reversed the trial court, and the Supreme Court of Ohio agreed the motion should have been granted.
 {¶ 31} The Supreme Court of Ohio held Mourey had done all the law required. The Court rejected the state's argument that Mourey had to file the detainer with the prosecutor and the court with certification regarding his custodial status. The Court concluded the concern is whether the defendant did "everything reasonably required of him within his control, when he `caused to be delivered' his I.A.D. request form to the California prison officials."[13] Accordingly, the Supreme Court of Ohio rejected the strict compliance rule and found substantial compliance "more consonant in promoting the stated purpose of the agreement."[14]
 {¶ 32} Consequently, we must determine whether Levy did everything within his control that is reasonably contemplated by Ohio's I.A.D. law. We conclude he did not. Levy mailed his request to the Cuyahoga County Common Pleas Court clerk's office by ordinary mail; this is not substantial compliance within the meaning of State v. Mourey.
 {¶ 33} To comply with Mourey's substantial compliance standard, we conclude Levy must file his request for final disposition by certified mail with both the prosecutor's office and the court having jurisdiction. Filing his request with the court only is insufficient. R.C. 2963.30, Article III(a) refers to an inmate filing his request for final disposition with the prosecutor and the court. R.C. 2963.03, Article III(b) refers to filing with the warden who forwards the documents to the prosecutor. In Mourey, the Ohio Supreme Court concluded Mourey had substantially complied when he filed with the warden who thereafter sent a certified letter of Mourey's request for final disposition to the Franklin County prosecutor. This, the Supreme Court held was all that the law required of Mourey.
 {¶ 34} Here, the law required of Levy to file with both the prosecutor and the court. Levy would be in substantial compliance had he filed with both the court and the prosecutor. Accordingly, we conclude he had not done all that was within his control. He alleges that he filed with the Cuyahoga County prosecutor's office; however, the prosecutor denies receipt and nothing exists in the record to establish otherwise. Under Mourey, it was within Levy's control to file a certified mail request with the prosecutor.
 {¶ 35} We are guided by the facts in Mourey, which are strikingly different than in Levy's case. The reality is inMourey, the prosecutor was served by certified mail. We interpret Mourey as holding when the inmate serves the warden and the warden serves the prosecutor, that is sufficient. Here, Levy served only the court. Consequently, we conclude when the inmate files a pleading with the court regarding final disposition, the inmate is required to file with both the court and the prosecutor unless the inmate uses the mechanism employed in State v. Mourey, that is, serving the public official.
 {¶ 36} Accordingly, we conclude Levy failed to invoke Article III (a) or (b); therefore, Article IV applies. Article IV applies when the prosecution files the detainer. When the prosecution files the detainer, the speedy trial begins to run after the inmate is returned to the requesting state. The prosecution has one hundred twenty days to bring the inmate to trial. This time starts to run after the inmate has been returned to the requesting state. Here, the prosecutor filed his detainer with the warden on April 30, 2001. Levy returned to Ohio on September 12, 2001. On December 5, 2001, Levy appeared in court and waived his speedy trial. Under Article IV, the prosecutor had until January 9, 2002 to bring Levy to trial. However, Levy waived his right to a speedy trial and was tried on February 11, 2002. We conclude his waiver tolled the speedy trial. Additionally, we conclude his motion to dismiss filed on December 18, 2001, tolled the running time of the R.C. 2963.30, Article IV. Accordingly, Levy's first assigned error is overruled.
 {¶ 37} In his second assigned error, Levy contends the trial court abused its discretion in excluding his children from the courtroom.
 {¶ 38} "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable * * *."[15]
 {¶ 39} The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right of the accused to a public trial. This protection is also contained in the Ohio Constitution, Section 10, Article I. However, the right to a public trial is not absolute and may in very limited circumstances yield to overriding interests.[16]
 {¶ 40} In Waller v. Georgia,[17] the United States Supreme Court set forth the following four-prong test which courts must use to determine whether closure of the courtroom is necessary:
 {¶ 41} the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced;
 {¶ 42} the closure must be no broader than necessary to protect that interest;
 {¶ 43} the trial court must consider reasonable alternatives to closing the proceeding; and
 {¶ 44} it must make findings adequate to support the closure.[18]
 {¶ 45} A review of the record reveals the trial court was concerned about Levy's five young children seeing their father sitting through trial in custody. The trial court allowed adult family members to observe the trial. Additionally, the deputies expressed concern about providing adequate supervision for the courtroom if they had to also contend with the young children.
 {¶ 46} Because the trial court only excluded Levy's children, and not adult family members from the courtroom, our analysis need not rise to the level of that espoused in United States v.DeLuca.[19] The trial court's concern for Levy's children was an act of compassion and not an abuse of discretion. Levy's second assigned error lacks merit.
 {¶ 47} We address Levy's third and fourth assigned errors together because they both involve the trial court's denial of his Rule 29 Motion for acquittal.
 {¶ 48} A motion for a judgment of acquittal is properly denied when reasonable minds can reach different conclusions as to whether each material element of a crime had been proved beyond a reasonable doubt.[20]
 {¶ 49} We address the charge of forgery first. The pivotal question is whether sufficient evidence existed at trial to support a finding that Levy committed the acts charged in the indictment? Forgery is defined by R.C. 2913.31 as follows:
 {¶ 50} No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 51} Forge any writing of another without the other person's authority;
 {¶ 52} Forge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed;
 {¶ 53} Utter, or possess with purpose to utter, any writing that the person knows to have been forged."
 {¶ 54} Levy argues the clothing inventory forms were not release papers and thus the evidence was insufficient to prove the indicted offense of forgery. We are not convinced. Corrections Officer Gary Greg testified all inmates being released from the facility must sign for the clothing they wore when first incarcerated. He further testified Levy told him his name was James Evans, gave the date of birth for James Evans, and signed the name of James Evans on the clothing inventory form to obtain civilian clothing belonging to James Evans. Since an inmate being released is not expected to go out in public in the garb of the penal institution, it is fundamental and practical that they would sign a clothing inventory as part of the release procedure. We conclude a clothing inventory form is part of the chain of release papers necessary for releasing the inmate from the institution, and thus there was sufficient evidence to convict Levy of forgery.
 {¶ 55} We also believe that in the case sub judice the State presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that Levy committed escape. R.C.2921.34(A)(1) sets forth the offense of escape and provides as follows:
 {¶ 56} "(A)(1) No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement."
 {¶ 57} Five of the State's witnesses testified to observing Levy engaged in some aspect of the above definition of escape. Averyheart testified Levy told him he was James Evans, and answered basic questions correctly about James Evans. Officers Smith and Doniver observed Levy give incorrect information about James Evans, though they earlier heard him tell Averyheart he was James Evans. Corporal Moore testified Levy answered questions from James Evans' booking card correctly.
 {¶ 58} Quite troubling is the fact that the individual, Landon Nicholson, whom bail bondsman Reginald Crosby testified was instrumental in obtaining the bond for James Evans, had visited Levy. A picture of Nicholson's driver's license was listed on Levy's visitation list. Additionally, James Evans shared the same prison pod with Levy. The average juror listening to this information, along with the testimony of the corrections officers, would think an escape plan was set in motion between Nicholson, Evans and Levy.
 {¶ 59} After listening to the above aforementioned testimony and viewing the evidence, the only conclusion reasonable minds could reach is that the State had proved every material element of escape. Finally, when Levy testified, he stated on the night of the incident it was a "Spanish Guy" who told him to get dressed to be released.[21] Levy stated this individual was not present to testify. Levy could have subpoenaed this witness, but failed to do so. The trial court properly denied Levy's Crim.R. 29 motion, consequently, Levy's third and fourth assigned errors lack merit.
 {¶ 60} Levy argues in his fifth and sixth assigned errors, the trial court erred when it instructed the jury on how to judge the credibility of his testimony and that of the law enforcement officers.
 {¶ 61} At trial, Levy failed to object to the trial court's instruction. Therefore, we review this assigned error for plain error only. For an error to constitute plain error, it must be shown the outcome of the accused's trial would have been otherwise, but for the error.[22]
 {¶ 62} It is well established that a trial judge must at all times remain impartial and refrain from comments which might influence the jury.[23] In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness.[24]
 {¶ 63} In the instant case, eleven law enforcement officers and the defendant acting as his own attorney testified. The trial court instructed the jury not to give any greater deference to the testimony of the law enforcement officers, and also to weigh Levy's testimony in the same manner as the other witnesses. A review of the record reveals the trial court was very cognizant and patient with the fact Levy was acting as his own counsel. His instructions were meant as an added measure of fairness in the process. We conclude, based on the overwhelming evidence, the outcome of the trial would not have been different if the instructions were not given. Consequently, Levy's fifth and sixth assigned errors lack merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, J., concurs; McMonagle, J., Concurs in judgment only.
 APPENDIX
In 1970 Congress enacted the Interstate Agreement on Detainers Act, 18 U.S.C. App., pp. 1395-1398 (1976 ed.), joining the United States along with 46 States and the District of Columbia as parties to the Interstate Agreement on Detainers. Ohio adopted the law verbatim and the two articles relevant to this case are as follows: Article III of the I.A.D. provides a procedure whereby a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer.
This section states in part:
"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.
"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate of the appropriate prosecuting official and court by registered or certified mail, return receipt requested."
Article IV provides the means by which a prosecutor who has lodged a detainer against a prisoner in another state can secure the prisoner's presence in his jurisdiction for disposition of the outstanding charges. Specifically, Article IV provides in part:
"(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated[.] * * *
"(b) Upon receipt of the officer's written request as provided in paragraph (a) hereof, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. * * *
"(c) In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."
[1] See Appendix.
[2] R.C. 2941.401 states in pertinent part: "When a person has entered upon a term of imprisonment in a correctional institutionof this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance." (Emphasis added.)
[3] § 24-60-501(III)(a).
[4] § 24-60-501 (IV)(a).
[5] People v. Bost, (Colo. 1989), 770, P.2d 1209, 1214-1215, citing United States v. Mauro (1978), 436 U.S. 340, 343, 98, S.Ct. 1834, 56 L.Ed.2d 329, (writ of habeas corpus ad prosequendum, by which the United States obtains custody of state application of the IAD); People v. Newton, 764 P.2d at 1186; see, also, Dodson v. Cooper, (Colo. 1985), 705 P.2d 500, 502, certiorari denied (1986), 474 U.S. 1084, 106 S.Ct. 857, 88, L.Ed.2d 896; People v. Yellen (Colo. 1985), 704 P.2d 306, 311.
[6] 764 P.2d 1182.
[7] People v. Bost (Colo. 1989), 770 P.2d 1209, 1214-1215, citing People v. Newton, 764 P.2d 1182.
[8] Id. at 1189.
[9] See, also, People v. Greenwald, (Colo. 1985),704 P.2d 312, (120-day speedy trial provision of Article IV(c)) of the IAD relates only to those charges that underlie a detainer previously lodged against the defendant). People v. Bost (Colo. 1989),770 P.2d 1209, 1215.
[10] (1978), 436 U.S. 340, 343, 56 L.d.2d 329, 98 S.Ct. 1834.
[11] United States v. Mauro (1978), 436 U.S. 340, 361,98 S.Ct. 1834, 1848, 56 L.Ed.2d 329, 347.
[12] (1992), 64 Ohio St.3d 482.
[13] Id. at 486.
[14] Id. at 488.
[15] State v. Adams (1980), 62 Ohio St.2d 151, 157. (Citations omitted).
[16] See United State v. DeLuca (C.A. 1, 1998), 137 F.3d 24,33, citing Waller v. Georgia (1984), 467 U.S. 39, 45,104 S.Ct. 2210, 81 L.Ed.2d 31.
[17] Waller v. Georgia (1984), 467 U.S. 39, 45,104 S.Ct. 2210, 81 L.Ed.2d 31.
[18] 467 U.S. at 48.
[19] (C.A. 1, 1998), 137 F.3d 24, 33.
[20] State v. Nelson (Feb. 25, 1999), Cuyahoga App. No. 73289, citing State v. Beaver (1997), 119 Ohio App.3d 385,390.
[21] Tr. at 692.
[22] State v. Swanson (1984), 16 Ohio App.3d 375, 377.
[23] State v. Boyd (1989), 63 Ohio App.3d 790, 794, paragraph three of the syllabus.
[24] Id.