[Cite as *State v. Irish*, 2019-Ohio-2765.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLANT,                CASE NO. 10-18-13

    v.

SHANE P. IRISH,                        **O P I N I O N**

    DEFENDANT-APPELLEE.

Appeal from Mercer County Common Pleas Court
Trial Court No. 16-CRM-071

**Judgment Reversed and Cause Remanded**

**Date of Decision:** July 8, 2019

APPEARANCES:

    *Matthew K. Fox and Joshua A. Muhlenkamp* **for Appellant**

    *Reed D. Searcy* **for Appellee**

**PRESTON, J.**

{¶1} Plaintiff-appellant, the State of Ohio, appeals the October 12, 2018 judgment of the Mercer County Court of Common Pleas dismissing the indictment against defendant-appellee, Shane P. Irish ("Irish"). For the reasons that follow, we reverse.

{¶2} On June 16, 2016, the Mercer County Grand Jury indicted Irish on two counts: Count One of burglary in violation of R.C. 2911.12(A)(2), (D), a second-degree felony, and Count Two of theft in violation of R.C. 2913.02(A)(1), (B)(2), a fifth-degree felony. (Doc. No. 1). At the time, Irish was incarcerated for unrelated offenses, having commenced a 44-month prison sentence in July 2015. (Doc. No. 91). On June 15, 2017, Irish sent the Mercer County Prosecutor's Office a letter requesting final disposition of the outstanding indictment. (*Id.*). After being retrieved from the Belmont Correctional Institution, Irish was finally served with a copy of the indictment on June 26, 2017. (*Id.*). On July 7, 2017, Irish appeared for arraignment and pleaded not guilty to the counts of the indictment. (Doc. No. 20).

{¶3} A change of plea hearing was held on August 18, 2017. (Doc. No. 34); (Aug. 18, 2017 Tr. at 3). Pursuant to plea negotiations, the State moved to amend Count One of the indictment from second-degree felony burglary to trespass in a habitation in violation of R.C. 2911.12(B), (E), a fourth-degree felony. (Aug. 18, 2017 Tr. at 3-4). The trial court granted the State's motion and amended Count One

of the indictment. (*Id.* at 5). The trial court proceeded to conduct a Crim.R. 11 plea colloquy, and Irish executed a "Waiver of Constitutional Rights" form which provided, among other things, that Irish understood that he was waiving "[t]he right to a speedy public trial by jury * * *." (Doc. No. 31). Thereafter, Irish withdrew his not guilty pleas and entered no contest pleas to amended Count One and Count Two of the indictment. (Doc. No. 34); (Aug. 18, 2017 Tr. at 6). The trial court accepted Irish's no contest pleas, found him guilty, and ordered a presentence investigation. (Doc. No. 34); (Aug. 18, 2017 Tr. at 14-15). The trial court filed its judgment entry of conviction on August 24, 2017. (Doc. No. 34).

{¶4} On August 30, 2017, the trial court sentenced Irish to three years of community control. (Doc. No. 41); (Aug. 30, 2017 Tr. at 7). The trial court tolled Irish's community control sanctions until he completed his 44-month prison sentence. (Doc. No. 41). The trial court filed its judgment entry of sentence on September 15, 2017. (*Id.*).

{¶5} On September 25, 2017, Irish filed a notice of appeal from the trial court's September 15, 2017 judgment of sentence. (Doc. No. 48). On May 14, 2018, this court reversed Irish's conviction and sentence. (Doc. No. 72). We remanded the matter to the trial court with instructions for the trial court to consider whether Irish's statutory and constitutional speedy-trial rights had been violated. (*Id.*).

{¶6} On remand, Irish filed a motion to dismiss the indictment on July 16, 2018 alleging that his statutory and constitutional speedy-trial rights were violated. (Doc. No. 89). On July 31, 2018, Irish filed a memorandum in support of his motion to dismiss. (Doc. No. 94). On August 14, 2018, the State filed a memorandum in opposition to Irish's motion to dismiss. (Doc. No. 95). On August 23, 2018, Irish filed his brief in reply to the State's memorandum in opposition to his motion to dismiss. (Doc. No. 96).

{¶7} Following a September 12, 2018 hearing, the trial court granted Irish's motion to dismiss and dismissed the indictment on October 12, 2018. (Doc. No. 100). Specifically, the trial court concluded that Irish's statutory speedy-trial rights under R.C. 2945.71 were violated because he was not brought to trial within 270 days after indictment. (*Id.*). The trial court also concluded that Irish's constitutional speedy-trial rights were violated. (*Id.*).

{¶8} On November 7, 2018, the State filed a notice of appeal. (Doc. No. 107). It raises one assignment of error.

### Assignment of Error

**The trial court erred when it found that the speedy trial statute, ORC §2945.71, had been violated and granted the defendant's motion to dismiss, and in improperly conflating the statutory and constitutional speedy trial rights.**

{¶9} In its assignment of error, the State argues that the trial court erred by granting Irish's motion to dismiss. Specifically, the State argues that the trial court

erred by concluding that R.C. 2945.71 controlled the time within which Irish should have been brought to trial. (Appellant's Brief at 13). It contends that because Irish was imprisoned in an Ohio correctional institution on unrelated charges when the indictment was issued, the period of time within which it was required to bring Irish to trial was governed exclusively by R.C. 2941.401. (*Id.* at 17-18). According to the State, Irish's statutory speedy-trial rights under R.C. 2941.401 were not violated because, as required by R.C. 2941.401, his case was initially resolved within 180 days after he filed a request for final disposition. The State further argues that the trial court erred by concluding that Irish's constitutional rights to a speedy trial were also violated. (*Id.* at 14-17).

{¶10} "'A speedy trial claim involves a mixed question of law and fact for purposes of appellate review.'" *State v. Gartrell*, 3d Dist. Marion No. 9-14-02, 2014-Ohio-5203, ¶ 104, quoting *State v. Hansen*, 3d Dist. Seneca No. 13-12-42, 2013-Ohio-1735, ¶ 20, citing *State v. Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, ¶ 11 (3d Dist.). "'Accordingly, a reviewing court must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence but will independently review whether the trial court correctly applied the law to the facts of the case.'" *Id.*, quoting *Hansen* at ¶ 20, citing *Masters* at ¶ 11.

{¶11} "'An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution

and Ohio Constitution, Article I, Section 10.'" *State v. Dahms*, 3d Dist. Seneca No. 13-16-16, 2017-Ohio-4221, ¶ 102, quoting *State v. Ferguson*, 10th Dist. Franklin No. 16AP-307, 2016-Ohio-8537, ¶ 12, citing *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 32. "In Ohio, the right to a speedy trial is implemented by statutes that impose a duty on the state to bring the defendant to trial within a specified time." *State v. Melampy*, 12th Dist. Brown No. CA2007-04-008, 2008-Ohio-5838, ¶ 9, citing *Cleveland v. Sheldon*, 8th Dist. Cuyahoga No. 82319, 2003-Ohio-6331, ¶ 16. The interplay between two of these statutes, R.C. 2945.71 and 2941.401, is at the heart of this case.

{¶12} Ohio's "general" speedy-trial statutes are contained in R.C. 2945.71 et seq. R.C. 2945.71 provides that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). This 270-day period may be extended for one or more of the reasons listed in R.C. 2945.72(A)-(I). Absent any such extension, failure to bring a defendant to trial within the 270-day period subjects the case to dismissal upon motion of the defendant. R.C. 2945.73(B). "When an accused is discharged pursuant to [R.C. 2945.73(B)] * * *, such discharge is a bar to any further criminal proceedings against [the defendant] based on the same conduct." R.C. 2945.73(D). "The provisions of R.C. 2945.71 et seq. * * * are mandatory and must be strictly complied with by the trial court." *State v. Smith*, 140 Ohio App.3d 81,

86 (3d Dist.2000), citing *State v. Cloud*, 122 Ohio App.3d 626 (2d Dist.1997) and *State v. Pudlock*, 44 Ohio St.2d 104 (1975).

{¶13} Conversely, R.C. 2941.401 is a "specific" speedy-trial statute applicable only to defendants who are imprisoned in correctional institutions in the State of Ohio and facing charges for crimes separate from those for which they are already imprisoned. *Melampy* at ¶ 9, citing *Sheldon* at ¶ 16 and *State v. Clark*, 12th Dist. Warren No. CA2007-03-037, 2008-Ohio-5208, ¶ 30. R.C. 2941.401 provides:

> When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, he shall be brought to trial within one hundred eighty days after he causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of his imprisonment and a request for a final disposition to be made of the matter, except that for good cause shown in open court, with the prisoner or his counsel present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment under which

the prisoner is being held, the time served and remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the adult parole authority relating to the prisoner.

* * *

The warden or superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information, or complaint against him, concerning which the warden or superintendent has knowledge, and of his right to make a request for final disposition thereof.

* * *

If the action is not brought to trial within the time provided, subject to continuance allowed pursuant to this section, no court any longer has jurisdiction thereof, the indictment, information, or complaint is void, and the court shall enter an order dismissing the action with prejudice.

"In its plainest language, R.C. 2941.401 grants an incarcerated defendant a chance to have all pending charges resolved in a timely manner, thereby preventing the state from delaying prosecution until after the defendant has been released from his prison term." *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, ¶ 25. Like

R.C. 2945.71 et seq., R.C. 2941.401 is mandatory and must be strictly complied with by the trial court. *Smith* at 86.

**{¶14}** This court has previously addressed the relationship between R.C. 2945.71 and 2941.401. In *State v. Salyers*, we held: "Once [a request for disposition under R.C. 2941.401] is properly made, the State must bring the prisoner to trial within 180 days of the request. Absent such a request, the defendant must be brought to trial within 270 days of the arrest." 3d Dist. Marion No. 9-05-04, 2005-Ohio-5037, ¶ 9, citing R.C. 2945.71. Since *Salyers*, this court has endorsed or applied this interpretation of R.C. 2945.71 and 2941.401 on at least two occasions. *See State v. Kramer*, 3d Dist. Henry No. 7-11-05, 2012-Ohio-2841, ¶ 5, fn. 2; *State v. Schmuck*, 3d Dist. Hardin No. 6-08-13, 2009-Ohio-546, ¶ 12, 16, 35. Thus, in the *Salyers* line of cases, we concluded that a person who is imprisoned in an Ohio correctional institution and charged with a felony discrete from the crime for which they are imprisoned must be brought to trial within the standard 270-day period under R.C. 2945.71, absent extensions under R.C. 2945.72, but that they may shorten this period by up to 90 days by filing an R.C. 2941.401-compliant request for disposition. That is, we held that for a particular class of criminal defendants, R.C. 2941.401 supplements, rather than displaces, R.C. 2945.71.

**{¶15}** However, it has become clear that *Salyers* and its progeny are outliers. "The weight of authority * * * advises that once a defendant is admitted to

prison, R.C. 2945.71, et seq. ceases to apply and R.C. 2941.401 takes over." *State v. Charity*, 7th Dist. Mahoning No. 12MA214, 2013-Ohio-5385, ¶ 24, citing *State v. Stewart*, 2d Dist. Montgomery No. 21462, 2006-Ohio-4164, ¶ 21, citing *State v. Munns*, 5th Dist. Richland No. 2005-CA-0065, 2006-Ohio-1852, ¶ 16, *State v. Mavroudis*, 7th Dist. Columbiana No. 02CO44, 2003-Ohio-3289, ¶ 27, *State v. Cox*, 4th Dist. Jackson No. 01CA10, 2002-Ohio-2382, ¶ 17, *State v. Pesci*, 11th Dist. Lake No. 2001-L-026, 2002-Ohio-7131, ¶ 41-43, *State v. Ward*, 12th Dist. Clermont No. CA99-12-114, 2000 WL 1370993 (Sept. 25, 2000), and *State v. Fox*, 8th Dist. Cuyahoga No. 63100, 1992 WL 309353 (Oct. 22, 1992). *See Stewart* at ¶ 22 ("[T]he great weight of authority * * * support[s] * * * the proposition that once a person under indictment has begun serving a prison sentence in another case, the provisions of R.C. 2941.401 apply, to the exclusion of the provisions of R.C. 2945.71, et seq., so that the running of speedy trial time under the latter statute is tolled."). Among our sister courts of appeals, it is generally agreed that "R.C. 2941.401 supplants the provisions of R.C. 2945.71" while a defendant is imprisoned in an Ohio correctional institution. *State v. Skorvanek*, 9th Dist. Lorain No. 08CA009400, 2010-Ohio-1079, ¶ 19, citing *Stewart* at ¶ 22. Accordingly, these courts hold that "[w]hen a defendant is serving time in state prison, the speedy-trial time for pending charges is tolled and R.C. 2941.401's provisions prevail over conflicting provisions of R.C. 2945.71." *Charity* at ¶ 24, citing *Cleveland v. Adkins*, 156 Ohio App.3d 482, 2004-Ohio-1118,

¶ 6 (8th Dist.); *State v. Spencer*, 4th Dist. Scioto No. 15CA3718, 2017-Ohio-456, ¶ 24-27; *Skorvanek* at ¶ 19; *Stewart* at ¶ 21-22.

**{¶16}** In reaching this conclusion, these courts have observed that because it is a specific statute, R.C. 2941.401 prevails over the general speedy trial provisions contained in R.C. 2945.71 et seq. *See Stewart* at ¶ 21. Furthermore, these courts note that R.C. 2945.71(F) explicitly provides that R.C. 2945.71 "shall not be construed to modify in any way section 2941.401 * * * of the Revised Code." *See State v. Johnson*, 9th Dist. Summit Nos. 28515 and 28822, 2018-Ohio-2004, ¶ 35; *Stewart* at ¶ 18-21; *State v. Larkin*, 5th Dist. Richland No. 2004-CA-103, 2005-Ohio-3122, ¶ 13.

**{¶17}** We find these courts' reasoning to be persuasive. Therefore, we conclude that when a person who is imprisoned in an Ohio correctional institution is charged with a crime separate from the crime for which they are imprisoned, R.C. 2941.401 applies to the exclusion of R.C. 2945.71. Generally, for as long as such a defendant remains imprisoned in an Ohio correctional institution, statutory speedy-trial time will not begin to run until the defendant files a request for disposition in accordance with R.C. 2941.401. *See State v. Ondrusek*, 9th Dist. Lorain Nos. 09CA009626 and 09CA009673, 2010-Ohio-2811, ¶ 6-12. To the extent that *Salyers*, *Schmuck*, and *Kramer* conflict with the holding adopted herein, they are overruled.

{¶18} We now apply these principles to the facts of this case. It is undisputed that Irish was imprisoned in an Ohio correctional institution throughout the entire period relevant to this case: June 16, 2016, the date he was indicted, through August 18, 2017, the date he entered his no contest pleas. Thus, during this period, R.C. 2941.401 applied to the exclusion of R.C. 2945.71, and the trial court erred, therefore, by dismissing the indictment for a violation of Irish's statutory speedy-trial rights under R.C. 2945.71.

{¶19} Furthermore, we conclude that Irish's statutory speedy-trial rights under R.C. 2941.401 were not violated. Before the trial court, the parties stipulated that the Mercer County Prosecutor's Office received a letter from Irish on June 15, 2017 requesting disposition of the outstanding indictment. (Doc. No. 91). Although the State contends in its appellate brief that Irish's request for disposition was deficient, upon receiving the request, the State promptly responded by filing a motion to convey Irish from the Belmont Correctional Institution, resulting in Irish's initial appearance on June 27, 2017. (*See* Appellant's Brief at 12-13); (Doc. Nos. 6, 7, 15). Accordingly, we will assume that the 180-day period under R.C. 2941.401 began to run on June 15, 2017. Irish entered his no contest pleas on August 18, 2017, 64 days after the State received his request for disposition. Hence, the indictment against Irish was initially resolved well within the 180-day requirement of R.C. 2941.401.

{¶20} Nevertheless, Irish argues that the indictment could have been properly dismissed under R.C. 2941.401 because the State "utterly failed in its duty to, at the very least, inform [him] of the untried indictment * * *." (Appellee's Brief at 17). He argues that R.C. 2941.401 requires both that the State inform the warden or superintendent of a prison in which a defendant is held about charges pending against the defendant and that the warden or superintendent advise the defendant in writing of the pending charges and of the right to request disposition. (*Id.* at 16). Irish observes that the "State presented not one shred of evidence indicating it complied with this requirement." (*Id.*). He concludes that because he was not made aware of the indictment until May 2017, the trial court could also have properly dismissed the indictment for a violation of R.C. 2941.401, although it did so only for a violation of R.C. 2945.71. (*Id.*).

{¶21} Irish's argument is without merit. The Supreme Court of Ohio has previously concluded that R.C. 2941.401 does not require the State to exercise reasonable diligence to locate an incarcerated defendant. *Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, at ¶ 20-22. Instead, "R.C. 2941.401 places the initial duty on the defendant to cause written notice to be delivered to the prosecuting attorney and the appropriate court advising of the place of his imprisonment and requesting final disposition." *Id.* at ¶ 20. While R.C. 2941.401 does obligate a warden or prison superintendent to inform an incarcerated defendant of the charges against him, this

-13-

duty arises "only when the warden or superintendent has knowledge of such charges." *Id.* If a warden or prison superintendent has knowledge of untried charges pending against a prisoner in their custody and fails to inform the prisoner in writing of the source and contents of those charges and of the right to request disposition of the charges, the prisoner's speedy-trial rights under R.C. 2941.401 are violated if the prisoner is not brought to trial within 180 days after the warden or superintendent had cause to deliver such notification, even if the prisoner was otherwise aware of the pending charges. *See State v. Dillon*, 114 Ohio St.3d 154, 2007-Ohio-3617, ¶ 19-20, 23.

{¶22} However, under R.C. 2941.401, a law enforcement officer's knowledge of an indictment pending against an inmate or the location of the inmate is not necessarily imputed to the warden or to the State at large. *Spencer*, 2017-Ohio-456, at ¶ 25 ("We * * * decline to rewrite [R.C. 2941.401] so that knowledge of the * * * Sheriff is per se knowledge imputed to the warden."), citing *State v. Savage*, 12th Dist. Madison Nos. CA2014-02-002, CA2014-02-003, CA2014-03-006 and CA2014-03-007, 2015-Ohio-574, ¶ 16, 23-24. Furthermore, there is no equitable exception to the plain language of R.C. 2941.401 for a defendant's claimed lack of knowledge of the charges pending against them. *Id.*, citing *State v. McCain*, 9th Dist. Wayne No. 15AP0055, 2016-Ohio-4992, ¶ 25 (refusing to "carve out an equitable exception" to R.C. 2941.401 where the defendant "was unaware of

the charges pending against her" despite a diligent search: "Regardless of her reason for not doing so, because [the defendant] failed to comply with [R.C. 2941.401], the 180-day time period * * * was not triggered."). Consequently, even when an imprisoned defendant is unaware that charges are pending against him for an extended period of time, the State does not typically have a duty to bring the defendant to trial within 180 days as required by R.C. 2941.401 unless and until the defendant files a request for disposition in accordance with R.C. 2941.401. *See Hairston* at ¶ 20, 26; *State v. Hubbard*, 12th Dist. Butler No. CA2014-03-063, 2015-Ohio-646, ¶ 39 ("Before the jurisdiction of the trial court is limited for untimeliness, an inmate must act to trigger the jurisdictional timeframe, or, alternatively, a warden with knowledge of the source and contents of [untried charges] must have failed to inform the inmate in writing of such [charges], thereby triggering the jurisdictional limitation."); *Spencer* at ¶ 25.

{¶23} Here, there is no evidence in the record suggesting that the warden or superintendent of any of the correctional institutions in which Irish was incarcerated had knowledge of the untried indictment. Furthermore, although the record contains evidence that a member of the law enforcement community in Mercer County may have been aware of the indictment pending against Irish and of the fact that he was incarcerated in the Belmont Correctional Institution, this knowledge is not imputed to any of the wardens or superintendents who had custody of Irish. (*See* Sept. 12,

-15-

2018 Tr. at 26-27). Finally, the record does not indicate that Irish attempted to comply with R.C. 2941.401 in any way prior to sending his June 2017 request for disposition. *See Spencer* at ¶ 25; *State v. Rice*, 1st Dist. Hamilton No. C-150191, 2015-Ohio-5481, ¶ 41-43; *Hubbard* at ¶ 36-39. Therefore, in this case, the State's duty under R.C. 2941.401 to try Irish within 180 days arose, at earliest, upon its receipt of Irish's request for disposition on June 15, 2017, and as discussed above, the charges against Irish were initially resolved in late August 2017, well before the 180-day period expired.

{¶24} We acknowledge that, in some cases, this interpretation of the relation between R.C. 2945.71 and 2941.401 may result in lengthy delays in the trials of prisoners who do not timely invoke their rights under R.C. 2941.401 or are incapable of doing so. However, such prisoners are not left entirely without recourse. "[A]n imprisoned defendant can either comply with the duty in [R.C. 2941.401] or claim a violation of the constitutional right to a speedy trial * * *." *Spencer* at ¶ 27. Here, Irish did (or attempted to do) both. Although we have concluded that the charges against Irish were initially resolved within the applicable 180-day period, thereby defeating his claim that his statutory speedy-trial rights were violated, Irish also claimed that his constitutional rights to a speedy trial were violated. The trial court seemingly agreed with Irish's contention, and we now consider whether the trial court erred in reaching this conclusion.

-16-

**{¶25}** "To determine whether a defendant has been deprived of [their] constitutional speedy-trial rights, a court must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of a speedy-trial right, and (4) the prejudice to the defendant." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 88, citing *State v. Selvage*, 80 Ohio St.3d 465, 467 (1997) and *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182 (1972). In balancing these four factors, the court must examine the totality of the circumstances; no one factor is controlling. *State v. Keaton*, 10th Dist. Franklin No. 16AP-716, 2017-Ohio-7036, ¶ 8; *Rice* at ¶ 23.

**{¶26}** However, prior to engaging in any balancing, "the court must make a threshold determination concerning the length of [the] delay." *Adams* at ¶ 89. "'Until there is some delay *which is presumptively prejudicial*, there is no necessity for inquiry into the other factors that go into the balance.'" (Emphasis sic.) *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, ¶ 23, quoting *Barker* at 530. Stated differently, "the *Barker* analysis is only triggered once a 'presumptively prejudicial' delay is shown." *Keaton* at ¶ 9, citing *Doggett v. United States*, 505 U.S. 647, 651-652, 112 S.Ct. 2686 (1992) and *State v. Yuen*, 10th Dist. Franklin No. 03AP-513, 2004-Ohio-1276, ¶ 10. "A delay becomes presumptively prejudicial as it approaches one year in length." *Adams* at ¶ 90, citing *Doggett* at 652, fn. 1.

**{¶27}** Here, the trial court found that 375 days elapsed between the date of the indictment and the date Irish was served with a copy of the indictment. (Doc. No. 100). Further, the trial court found that an additional 53 days passed between the date Irish was served with the indictment and the date he entered his no contest pleas. (*Id.*). Thus, a little more than one year elapsed between the date Irish was formally accused of committing the offenses at issue in this case and the date he was officially notified of the substance of those accusations, and an additional period of nearly two months passed between when Irish was served with the indictment and when he entered his pleas. Therefore, we conclude that this delay is presumptively prejudicial so as to trigger consideration of the *Barker* factors. *See State v. Sweat*, 4th Dist. Ross No. 14CA3439, 2015-Ohio-2689, ¶ 12, 15 (concluding that a 13-month delay between the defendant's initial arrest and service of the indictment was presumptively prejudicial); *State v. Owens*, 2d Dist. Montgomery No. 23623, 2010-Ohio-3353, ¶ 7-8 (concluding that a delay of "just over one year" between indictment and service of the indictment was presumptively prejudicial).

**{¶28}** In weighing the *Barker* factors, we first consider whether the length of the delay tilts in favor of Irish's claim that his constitutional speedy-trial rights were violated. While we initially consider the length of the delay in determining whether we must even balance the *Barker* factors, upon concluding that a delay is presumptively prejudicial, the length of the delay is analyzed in a new light in

conjunction with the other *Barker* factors. *See State v. Kadunc*, 10th Dist. Franklin No. 15AP-920, 2016-Ohio-4637, ¶ 21. In this case, although the delay is sufficient to raise a bare presumption of prejudice and while we find that the length of the delay ultimately weighs in Irish's favor, we conclude that its weight is insignificant.

{¶29} In *State v. Triplett*, the Supreme Court of Ohio concluded that a 54-month delay between indictment and trial, while significant, did not violate the defendant's constitutional right to a speedy trial. 78 Ohio St.3d 566, 569-571 (1997). In analyzing the first *Barker* factor, the court observed:

> [T]he delay in this case, while significant, did not result in any infringement on Triplett's liberty. In fact, according to her own testimony, she was completely ignorant of any charges against her. The interests which the Sixth Amendment was designed to protect— freedom from extended pretrial incarceration and from the disruption caused by unresolved charges—were not issues in this case. Therefore, while the first factor does technically weigh in Triplett's favor, its weight is negligible.

*Id.* at 569.

{¶30} We find *Triplett*'s reasoning applicable to the instant case. At the time Irish was indicted on June 16, 2016, he was serving a 44-month prison sentence for unrelated crimes. (Doc. No. 91). When Irish was finally served with the indictment

in June 2017, he was still serving the 44-month prison sentence, and he remained imprisoned through his change of plea and sentencing hearings. Moreover, Irish testified that he did not become aware of the pending indictment until May 2017 when he received a letter from his former court-appointed counsel advising him to request disposition of the matter. (Sept. 12, 2018 Tr. at 10-13); (Defendant's Ex. A). As Irish was unaware of the untried indictment for the substantial majority of the delay and because he was already serving an unrelated term of imprisonment, the record contains little indication that Irish's life was disrupted by the unresolved charges against him. Accordingly, although we conclude that the length of the delay weighs in Irish's favor, it does so only negligibly. *See, e.g.*, *Keaton*, 2017-Ohio-7036, at ¶ 11 (concluding that a 22-month delay weighed negligibly in favor of the defendant because the defendant did not know about the indictment prior to his arrest); *Hubbard*, 2015-Ohio-646, at ¶ 18 (holding that a post-indictment delay of nearly 27-months weighed only slightly in favor of the defendant because the defendant was incarcerated during the entire delay and was unaware of the indictment); *Owens*, 2010-Ohio-3353, at ¶ 9-10 (a delay of just over 12 months weighed marginally in the defendant's favor because he had no knowledge of the pending charges and was incarcerated); *State v. Smith*, 8th Dist. Cuyahoga No. 81808, 2003-Ohio-3524, ¶ 12 (finding that a 16-month delay weighed insignificantly in favor of the defendant where the defendant was periodically

incarcerated on unrelated charges throughout the delay and he admitted that he was unaware of the pending charges).

**{¶31}** Next, we consider the reasons the government assigns for the delay. The inquiry into causation for the delay involves a sliding scale. *McCain*, 2016-Ohio-4992, at ¶ 15; *Rice*, 2015-Ohio-5481, at ¶ 25. "Where the state purposefully causes a delay, hoping to gain some impermissible advantage at trial, this factor would weigh heavily against the state and in favor of dismissal." *Hubbard* at ¶ 19, citing *Doggett*, 505 U.S. at 656. In contrast, where the defendant caused or contributed to the delay, this factor would weigh significantly against him. *Id.*, citing *Triplett* at 569-570 and *Smith* at ¶ 14. Finally, "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered * * *." *Barker*, 407 U.S. at 531. "'Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground.'" *Hubbard* at ¶ 19, quoting *Doggett* at 656-657. "'Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.'" *Id.*, quoting *Doggett* at 657. "The weight assigned to official negligence compounds over time as the presumption of evidentiary prejudice grows." *Id.*, citing *Doggett* at 657.

{¶32} Here, there is no suggestion in the record that Irish or the State deliberately caused the delay. Instead, the State attempts to shift blame for the delay entirely onto Irish by relying on Irish's apparent inadvertence in failing to promptly file a request for disposition under R.C. 2941.401. The State notes that Ohio law "placed a duty on [Irish] to notify the appropriate prosecuting attorney and the appropriate court of his location." (Appellant's Brief at 15). The State urges that it "was simply complying with Ohio law and Ohio Supreme Court precedent—the State had no duty to seek out [Irish] and initiate proceedings against him." (*Id.*). It ultimately concludes that the "reason for the delay was not wrongdoing, either intentional or negligent, on the part of the State." (*Id.*).

{¶33} As explained earlier, R.C. 2941.401 does not require the State to exercise reasonable diligence to locate an incarcerated defendant, and usually, the State has no duty to bring an imprisoned defendant to trial within 180 days until the defendant submits a request for disposition. *Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, at ¶ 18, 20, 26. However, "[a]lthough R.C. 2941.401 imposes no duty to act diligently, the constitution places a duty on the state to exercise reasonable diligence to serve the indictment." *Spencer*, 2017-Ohio-456, at ¶ 34; *State v. Walker*, 10th Dist. Franklin No. 06AP-810, 2007-Ohio-4666, ¶ 26 ("'[A] defendant has no duty to bring himself to trial; the State has the duty as well as the duty of insuring that the trial is consistent with due process.'"), quoting *Barker* at 527.

Therefore, while the State may not be penalized under R.C. 2941.401 for failing to undertake a diligent effort to locate an incarcerated defendant, it does not follow that the State will be held entirely blameless under the constitutional analysis, especially where the exercise of even minimal diligence may have uncovered the defendant's location.

{¶34} At the hearing on Irish's motion to dismiss, Ronald Waltmire ("Waltmire"), formerly with the Celina Police Department and currently an investigator for the Mercer County Prosecutor's Office, testified that he, along with two other investigators from Mercer County, located Irish at the Madison Correctional Institution in order to serve him with a warrant to collect his DNA. (Sept. 12, 2018 Tr. at 25-26); (Doc. No. 91). He testified that he successfully served the warrant on Irish and collected a DNA sample from Irish via buccal swab. (*See* Sept. 12, 2018 Tr. at 25-27). Irish's DNA sample tied him to the offenses for which he was ultimately indicted in this case. (*See* Doc. No. 91). Furthermore, Waltmire testified that he knew at one time that Irish was later imprisoned in the Belmont Correctional Institution, the facility in which Irish was housed when he eventually learned that he was under indictment. (Sept. 12, 2018 Tr. at 26). Finally, Waltmire stated that an inmate's location is "normally" obtainable through the Ohio Department of Rehabilitation and Correction's ("ODRC") website. (*Id.* at 26-27).

**{¶35}** Thus, the record reflects that before Irish was indicted, three investigators from Mercer County were aware that Irish was incarcerated in the Madison Correctional Institution. The record further reflects that, at the very least, Waltmire was aware that Irish was later housed at the Belmont Correctional Institution. However, there is nothing in the record suggesting that anyone other than Waltmire knew that Irish had been relocated to the Belmont Correctional Institution. While this information likely could have been discovered by searching the ODRC's website, nothing in the record indicates that the State willfully refused to take the appropriate steps to determine Irish's precise location. Moreover, there is no evidence that the State intentionally failed to serve Irish with the indictment despite possessing knowledge of his location. Thus, from this record, we can discern little more than prosecutorial negligence on the part of the State. Accordingly, we conclude that the second factor weighs in Irish's favor, if only somewhat. *See Hubbard*, 2015-Ohio-646, at ¶ 19-20; *Rice*, 2015-Ohio-5481, at ¶ 25-26; *Owens*, 2010-Ohio-3353, at ¶ 11-13.

**{¶36}** Third, we consider Irish's assertion of his right to a speedy trial. "The third factor addresses the timeliness and frequency of the defendant's assertions of his speedy-trial right." *Rice* at ¶ 27, citing *Barker*, 407 U.S. at 529. Here, Irish's uncontradicted testimony establishes that he did not become aware of the untried indictment until May 2017—nearly a year after it was issued. (Sept. 12, 2018 Tr.

at 11-13); (*See* Defendant's Ex. A). Consequently, for most of the delay, Irish's failure to assert his right to a speedy trial or claim that his speedy-trial rights were violated will not be held against him. *See Hubbard* at ¶ 21, citing *Owens* at ¶ 14 and *State v. Boyd*, 4th Dist. Ross No. 04CA2790, 2005-Ohio-1228, ¶ 16. Furthermore, Irish filed his request for disposition under R.C. 2941.401 shortly after learning that there was an indictment pending against him, thus manifesting his intent to invoke his statutory speedy-trial rights.

{¶37} However, while Irish attempted to invoke his statutory speedy-trial rights in a relatively timely fashion, he did not file a motion to dismiss at any time before he entered his no contest pleas, and he did not assert a possible violation of his speedy-trial rights until he filed his first notice of appeal, which was nearly three months after he was served with the indictment. *See Keaton*, 2017-Ohio-7036, at ¶ 14 (six-month delay between arrest and filing of motion to dismiss weighed slightly in the State's favor); *McCain*, 2016-Ohio-4992, at ¶ 17 (three-month gap between arrest and filing of motion to dismiss weighed slightly against the defendant); *Walker*, 2007-Ohio-4666, at ¶ 31 (although the defendant asserted his right to a speedy trial at his arraignment, two-month delay between arraignment and filing of motion to dismiss weighed against his claim that he was deprived of his right to a speedy trial). In addition, when Irish entered the no contest pleas that initially resolved this case, he was specifically advised that he had the right to a speedy trial.

(*See* Doc. No. 31). Yet, he signed a waiver of constitutional rights form wherein he acknowledged and agreed that he was waiving the right to a speedy trial by entering his no contest pleas. (*Id.*). Therefore, although Irish raised his speedy-trial rights under R.C. 2941.401 nearly as quickly as he could, he then knowingly waived his speedy-trial rights and only belatedly argued that his speedy-trial rights were violated. As a result, we conclude that the third factor weighs slightly in favor of the State.

{¶38} Finally, we consider the degree to which Irish was prejudiced by the delay. In considering the prejudice suffered by a defendant, the Supreme Court of the United States has "held that the inquiring court should assess prejudice 'in light of the interests the speedy trial right was designed to protect.'" *McCain* at ¶ 18, citing *Barker* at 532. The speedy-trial right was designed to "prevent[] oppressive pretrial incarceration, minimiz[e] the accused's anxiety, and limit[] the possibility that the passage of time will impair the accused's ability to mount a defense." *Id.*, citing *Barker* at 532; *State v. Stevens*, 3d Dist. Logan No. 8-14-09, 2014-Ohio-4875, ¶ 19, citing *Barker* at 532. "'Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."'" *Stevens* at ¶ 19, quoting *Doggett*, 505 U.S. at 654, quoting *Barker* at 532. "Impairment of one's defense is also the most difficult form

of prejudice to prove 'because time's erosion of exculpatory evidence and testimony "can rarely be shown."'" *Id.*, quoting *Doggett* at 655, quoting *Barker* at 532.

**{¶39}** With respect to prejudice, Irish argues that "witnesses favorable to [him] may have dispersed; memories of all witnesses may have faded; and it is currently unknown whether the physical DNA evidence is still viable for DNA testing." (Appellee's Brief at 22). He notes that "[t]hese are things that cannot be affirmatively demonstrated by physical evidence because it would involve proving a negative, which is impossible to do." (*Id.*). Irish suggests that he does not need to demonstrate that he has actually been prejudiced because, due to the length of the delay, prejudice is presumed. (*See id.*).

**{¶40}** We disagree. In *Doggett*, the court acknowledged that "consideration of prejudice is not limited to the specifically demonstrable, and * * * affirmative proof of particularized prejudice is not essential to every speedy trial claim." 505 U.S. at 655. "When considered as 'part of the mix of relevant facts,' the presumptive prejudice that arises from a lengthy delay may be sufficient to support a finding of a speedy trial violation." *State v. Bailey*, 2d Dist. Montgomery No. 20764, 2005-Ohio-5506, ¶ 19, quoting *Doggett* at 656. Yet, "to warrant granting relief, [governmental] negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Doggett* at 657. Therefore, "where delay attributable to the negligence of the State

is more than one year (i.e., 'presumptively prejudicial' under the first *Barker* factor) but not exceeding long like the eight-and-one-half years at issue in *Doggett*, courts sometimes decline to find a speedy trial violation absent actual prejudice to the defendant." *Bailey* at ¶ 19. *See Hubbard*, 2015-Ohio-646, at ¶ 25-26; *Stevens* at ¶ 23-24, citing *State v. Ollivier*, 178 Wash.2d 813, 841 (2013); *Owens*, 2010-Ohio-3353, at ¶ 16-17; *Boyd*, 2005-Ohio-1228, at ¶ 15.

{¶41} The delay caused by the State's negligence in this case, while sufficient to raise a presumption of prejudice for purposes of triggering analysis of the *Barker* factors, was significantly shorter than the eight-and-one-half year delay at issue in *Doggett*. Accordingly, Irish was required to demonstrate actual prejudice.

{¶42} In this case, the first interest protected by the right to a speedy trial is not implicated. At all times relevant to Irish's speedy-trial claim, Irish was imprisoned for unrelated offenses. Therefore, Irish was not threatened with the prospect of oppressive pretrial incarceration as his liberty was already severely restrained. *See Spencer*, 2017-Ohio-456, at ¶ 36; *Hubbard* at ¶ 23; *Owens* at ¶ 15.

{¶43} Furthermore, for most of the delay, Irish was completely ignorant of the untried indictment. As a result, the pending charges could not have caused Irish any anxiety or concern during this period. *See Keaton*, 2017-Ohio-7036, at ¶ 15; *McCain*, 2016-Ohio-4992, at ¶ 19; *Owens*, 2010-Ohio-3353, at ¶ 15. In addition, once Irish learned about the indictment, the case proceeded quickly to its original

resolution, and there is no evidence in the record regarding Irish's anxiety or concern during the three-month period between when he learned about the charges and when he entered his no contest pleas. Thus, Irish fails to show that he suffered actual prejudice in connection with the second interest protected by the speedy-trial right.

{¶44} Moreover, we conclude that Irish has failed to demonstrate that his defense was actually prejudiced by the delay. At the hearing on Irish's motion to dismiss, Waltmire testified that the State's witnesses, including the victim, were still willing to testify and that the evidence collected from the scene of the crime was available for testing. (Sept. 12, 2018 Tr. at 21-23). Furthermore, Waltmire testified that the evidence was stored in the Celina Police Department's evidence room, that the conditions in the evidence room "should be constant," and that he was not aware of any case where evidence significantly degraded after being stored in the evidence room. (*Id.* at 31-32). However, he acknowledged that he did not know whether the buccal swab taken from Irish at the Madison Correctional Institution was still available for testing or whether the laboratory technician who first analyzed some of the organic evidence could testify. (*Id.* at 24, 27). Finally, while Waltmire could not say whether the buccal swab or blood samples could still yield DNA, he testified that so long as the samples still existed, they could be tested, and he confirmed that blood samples remained in the evidence room. (*Id.* at 28-30).

{¶45} Thus, at most, the record reflects that it is possible that some of the organic evidence tying Irish to the crimes may be unavailable or unsuitable for testing and that the whereabouts and availability of one of the State's witnesses are unknown, at least to Waltmire. However, the mere possibility that some of the State's evidence has deteriorated or that one of the State's witnesses may not be available to testify is insufficient to demonstrate actual prejudice to Irish's defense. Furthermore, Irish's conjecture that favorable witnesses may have "dispersed" and that the "memories of all witnesses may have faded" does not establish the requisite degree of prejudice.

{¶46} Finally, Irish argues that he was prejudiced by the delay because he "could have requested a sentence concurrent to what he was already serving." (Appellee's Brief at 22). However, "'the theoretical and speculative loss of the opportunity for [a] defendant to serve the sentence on the pending charge concurrently with the sentence in another case' is insufficient to constitute substantial prejudice to the defendant." *McCain*, 2016-Ohio-4992, at ¶ 19, quoting *Rice*, 2015-Ohio-5481, at ¶ 32. *See Spencer*, 2017-Ohio-456, at ¶ 37 ("Losing [the] opportunity to bargain for concurrent sentences is based upon speculation and is not sufficient to show prejudice; there is no constitutional or statutory right to be given concurrent sentences."). Furthermore, to the extent that Irish may have been denied some chance to bargain for concurrent sentences, we note that when Irish entered

his no contest pleas, he had only served approximately 24 months of his 44-month prison sentence.  (*See* Doc. No. 91).  As a result, Irish was not utterly deprived of the opportunity to negotiate for concurrent sentences.  Altogether, because we conclude that Irish has not shown actual prejudice, the fourth *Barker* factor weighs heavily in favor of the State.

{¶47} In sum, we find that the first and second *Barker* factors weigh slightly in Irish's favor.  However, we find that the third factor weighs slightly in the State's favor and that the fourth factor weighs decisively against Irish.  Accordingly, we conclude that Irish's constitutional rights to a speedy trial were not violated.  Because we ultimately conclude that neither his statutory nor constitutional speedy-trial rights were violated, the trial court erred by granting Irish's motion to dismiss.

{¶48} The State's assignment of error is sustained.

{¶49} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**