[Cite as *State v. Richard*, 2021-Ohio-2980.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 9-20-36

      v.

GREGORY RICHARD, JR.,              O P I N I O N

      DEFENDANT-APPELLANT.

---

Appeal from Marion County Common Pleas Court
Trial Court No. 18-CR-150

**Judgment Affirmed**

**Date of Decision: August 30, 2021**

---

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Nathan R. Heiser* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Gregory Richard, Jr. ("Richard"), appeals the September 23, 2020 judgment entry of sentence of the Marion County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from a series of drug-related events, including the April 2016 overdose of Halee Hull ("Hull") and the October 17, 2017 overdose death of Todd Thompson ("Thompson") in Marion County.[1] On April 5, 2018, the Marion County Grand Jury indicted Richard on Count One of trafficking in heroin in violation of R.C. 2925.03(A)(1), (C)(6), a fifth-degree felony, and Count Two of involuntary manslaughter in violation of R.C. 2903.04(A), a first-degree felony. (Doc. No. 1). However, because he was incarcerated in federal prison on another case, he did not appear for arraignment in Marion County until June 17, 2019. (Doc. No. 19). When he appeared for arraignment, he entered pleas of not guilty to the indictment. (*Id.*).

{¶3} On June 19, 2019, under a superseding indictment, the Marion County Grand Jury indicted Richard on an additional count of corrupting another with drugs in violation of R.C. 2925.02(A)(3), a second-degree felony. (Doc. No. 21). The superseding indictment also included a forfeiture specification as to the corrupting-another-with-drugs count and the trafficking-in-heroin count. (*Id.*). On June 24,

---

[1] Richard was also charged in this case in relation to the October 2015 overdose death of Carol Heenan; however, the jury found Richard not guilty of those charges.

2019, Richard appeared for arraignment and entered pleas of not guilty to the new indictment. (Doc. No. 32).

{¶4} On July 11, 2019, under a second superseding indictment, the Marion County Grand Jury indicted Richard on twenty-five counts: Count One of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), a first-degree felony; Counts Two, Five through Fourteen, Sixteen through Twenty, and Twenty-Two of trafficking in heroin in violation of R.C. 2925.03(A)(1), (C)(6), fifth-degree felonies; Counts Three, Fifteen, and Twenty-Three of corrupting another with drugs in violation of R.C. 2925.02(A)(3), second-degree felonies; Counts Four and Twenty-Four of involuntary manslaughter in violation of R.C. 2903.04(A), first-degree felonies; Count Twenty-One of trafficking in heroin in violation of R.C. 2925.03(A)(2), (C)(6), a fourth-degree felony; and Count Twenty-Five alleging that Richard was previously convicted of a federal-drug offense. (Doc. No. 65). Richard appeared for arraignment on July 15, 2019 and entered pleas of not guilty to the second superseding indictment. (Doc. No. 102).

{¶5} On July 17, 2019, under a supplemental indictment, the Marion County Grand Jury indicted Richard on forfeiture specifications as to Counts One through Three and Five through Twenty-Five. (Doc. No. 108). Richard appeared for arraignment on July 22, 2019 and entered pleas of not guilty to the supplemental

indictment. (Doc. No. 127). Also that day, Richard filed motions to dismiss the second superseding indictment. (Doc. Nos. 120, 121).

{¶6} On July 23, 2019, Richard filed a motion to dismiss Counts Five through Thirteen and Counts Sixteen through Twenty-One, which the State opposed. (Doc. Nos. 129, 131, 132, 144). On July 26, 2019, the trial court granted Richard's motion to dismiss Counts Five through Thirteen and Counts Sixteen through Twenty-One of the second superseding indictment, and dismissed those counts. (Doc. No. 148). Also that day, Richard filed a motion for separate trials under Crim.R. 14, which the State opposed. (Doc. Nos. 136, 137). After a hearing on July 29, 2019, the trial court denied Richard's motion to dismiss the second superseding indictment and Richard's motion to separate trials that same day. (Doc. Nos. 154, 155, 156).

{¶7} On August 10, 2020, the State filed a motion to dismiss Counts One and Twenty-Five. (Doc. No. 392). (*See also* Aug. 14, 2020 Tr., Vol. IV, at 736). The next day, the trial court (by agreement of the parties) dismissed Counts One and Twenty-Five and amended the indictment as follows: Counts One, Four, and Six to trafficking in heroin in violation of R.C. 2925.03(A)(2), (C)(6), fifth-degree felonies; Counts Two, Five, and Eight to corrupting another with drugs in violation of R.C. 2925.02(A)(3), second-degree felonies; and Counts Three and Nine to

involuntary manslaughter in violation of R.C. 2903.04(A), first-degree felonies. (Doc. No. 402).

{¶8} Also on August 10, 2020, Richard filed a motion to dismiss the amended second superseding indictment alleging a violation of his speedy-trial rights, which the trial court denied. (Doc. No. 399); (Aug. 12, 2020 Tr., Vol. II, at 179). The case proceeded to a jury trial on August 11-17, 2020. (Doc. No. 448). On August 17, 2020, the jury found Richard guilty of Counts Four, Five, Eight, but not guilty of Counts One, Two, Three, Six, and Nine of the amended second superseding indictment. (Doc. Nos. 428, 429, 430, 431, 432, 433, 434, 435).

{¶9} On September 22, 2020, the trial court sentenced Richard to 11 months in prison on Count Four, 5 years in prison on Count Five, and 7 years in prison on Count Eight. (Doc. No. 458). The trial court ordered that Richard serve the terms imposed as to Counts Four and Five concurrently, and further ordered that those concurrent terms be served consecutively to the term imposed as to Count Eight, for a total aggregate sentence of 12 years in prison. (*Id.*).[2]   The trial court further ordered the currency identified in the forfeiture specifications forfeited. (*Id.*). (*See also* Sept. 22, 2020 Tr. at 19).

{¶10} Richard filed his notice of appeal on October 2, 2020. (Doc. No. 466). He raises five assignments of error for our review. For ease of our discussion, we

---

[2] The trial court filed its judgment entry of sentence on September 23, 2020. (Doc. No. 458).

will review Richard's first and second assignments of error, followed by his third and fourth assignments of error together, then his fifth assignment of error.

**Assignment of Error No. I**

**Appellant's rights to a speedy trial under the Sixth Amendment and the Ohio Constitution were violated by post-indictment delay in regard to count seven, corrupting another with drugs.**

{¶11} In his first assignment of error, Richard argues that the trial court erred by denying his motions to dismiss the second superseding indictment (and the amended superseding indictment) alleging a post-indictment delay because his constitutional right to a speedy trial was violated. In particular, Richard contends only that his corrupting-another-with-drugs charge under Count Eight "should be dismissed on speedy trial grounds" since "[t]he original indictment was filed in April 2018 and trial was not held until August 2020, a total of two years and four months," and he was prejudiced by this delay.[3] (Appellant's Brief at 12, 16).

*Standard of Review*

{¶12} "Appellate review of a trial court's decision on a motion to dismiss for a speedy-trial violation involves a mixed question of law and fact." *State v. Westerfield*, 3d Dist. Crawford No. 3-17-15, 2018-Ohio-2139, ¶ 17, citing *State v. James*, 4th Dist. Ross No. 13CA3393, 2014-Ohio-1702, ¶ 23. *See also State v.*

---

[3] In his brief, Richard alleges that his corrupting-another-with drugs conviction under *Count Seven* should be dismissed on speedy-trial grounds; however, "there's no Count [Seven]" in this case. (Aug. 17, 2020 Tr., Vol. V, at 794). (*See also* Aug. 14, 2020 Tr., Vol. IV, at 735-736). Because there is no Count Seven in this case, we are assuming that Richard is alleging a speedy-trial violation as to Count Eight.

*Johnson*, 4th Dist. Scioto No. 16CA3733, 2016-Ohio-7036, ¶ 19 ("Furthermore, we review a decision interpreting the [Interstate Agreement on Detainers ("IAD")] under a de novo standard of review."). "'Accordingly, a reviewing court must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence but will independently review whether the trial court correctly applied the law to the facts of the case.'" *State v. Gartrell*, 3d Dist. Marion No. 9-14-02, 2014-Ohio-5203, ¶ 104, quoting *State v. Hansen*, 3d Dist. Seneca No. 13-12-42, 2013-Ohio-1735, ¶ 20, citing *State v. Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, ¶ 11 (3d Dist.). *See also Westerfield* at ¶ 17.

*Analysis*

**{¶13}** "An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Ohio Constitution, Article I, Section 10." *State v. Ferguson*, 10th Dist. Franklin No. 16AP-307, 2016-Ohio-8537, ¶ 12, citing *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 32. "Although 'statutory and constitutional speedy trial [rights] are [generally] coextensive,' the constitutional right, as embodied in the Ohio Constitution and the United States Constitution, 'may be broader than the * * * statutory right' in some circumstances." *State v. Wagner*, 2d Dist. Miami No. 2020-CA-6, 2021-Ohio-1671, ¶ 14, quoting *State v. Kadunc*, 10th Dist. Franklin No. 15AP-920, 2016-Ohio-4637, ¶ 19.

{¶14} "'To determine whether a defendant has been deprived of [their] constitutional speedy-trial rights, a court must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of a speedy-trial right, and (4) the prejudice to the defendant.'" *State v. Irish*, 3d Dist. Mercer No. 10-18-13, 2019-Ohio-2765, ¶ 25, quoting *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 88.

{¶15} "However, prior to engaging in any balancing, 'the court must make a threshold determination concerning the length of [the] delay.'" *Id.* at ¶ 26, quoting *Adams* at ¶ 89. "'"Until there is some delay *which is presumptively prejudicial*, there is no necessity for inquiry into the other factors that go into the balance."'" (Emphasis sic.) *Id.*, quoting *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, ¶ 23, quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182 (1972). "A delay becomes presumptively prejudicial as it approaches one year in length." *Adams* at ¶ 90, citing *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686 (1992), fn. 1.

{¶16} In this case, even if we assume without deciding that Richard's corrupting-another-with-drugs conviction under Count Eight "relate[s] back to the original April 2018 indictment for purposes of evaluating speedy trial," Richard's constitutional right to a speedy trial was not violated. (Appellant's Brief at 11). *See Adams* at ¶ 84 (noting that "[a] later indictment is not subject to the speedy-trial

timetable of an earlier indictment or arrest 'when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment' or earlier arrest"), quoting *State v. Baker*, 78 Ohio St.3d 108, 110 (1997). Here, the delay from the issuance of the indictment until Richard was brought to trial was approximately 28 months (April 5, 2018 to August 11, 2020). This delay weighs in favor of Richard and is long enough to be deemed "presumptively prejudicial," which necessitates consideration of the second, third, and fourth factors to determine whether he was deprived of his constitutional speedy-trial rights. *See Wagner* at ¶ 25, citing *Barker* at 530 and *Adams* at ¶ 88. Nevertheless, while the 28-month delay exceeded the one-year prescription, the first factor's weight is negligible (for reasons more fully explained below) since it did not result in a significant infringement on Richard's liberty. *See State v. Triplett*, 78 Ohio St.3d 566, 569 (1997).

{¶17} Accordingly, we will address the next factor—the reason for the delay. "The inquiry into causation for the delay involves a sliding scale." *Irish* at ¶ 31. "'Where the state purposefully causes a delay, hoping to gain some impermissible advantage at trial, this factor would weigh heavily against the state and in favor of dismissal.'" *Id.*, quoting *State v. Hubbard*, 12th Dist. Butler No. CA2014-03-063, 2015-Ohio-646, ¶ 19, citing *Doggett* at 656. "In contrast, where the defendant caused or contributed to the delay, this factor would weigh significantly against

him." *Id.* "Finally, '[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered * * * .'" *Id.*, quoting *Barker* at 531. ""Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground."" *Id.*, quoting *Hubbard* at ¶ 19, quoting *Doggett* at 656-657. ""Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun."" *Id.*, quoting *Hubbard* at ¶ 19, quoting *Doggett* at 657.

{¶18} Here, Richard argues that "a large portion of the delay is directly attributable to the State" because it "should not have taken three months" to serve him with the indictment and the warrant and because the State's "neglect resulted in another five months of delays" "after Richard filed his IAD motion." (Appellant's Brief at 14). In other words, Richard challenges *only* the delay between the indictment and the time he arrived in Ohio to face trial. Accordingly, we will address only that period of delay under the second factor. In our review of the second factor, we cannot find any evidence in the record to suggest that the State intentionally caused that delay, even though the State concedes that it may have been negligent in causing some delay during that time period.

{¶19} Indeed, our review of the record in this case reveals that a warrant for Richard's arrest was returned on April 6, 2018—the day after the indictment was issued in this case—with instructions for personal or residential service on Richard at 308 Carner Avenue in Marion or at the Multi-County Jail in Marion. (Doc. Nos. 2, 3). Yet, after attempting to personally serve Richard, the warrant was returned on June 28, 2018 indicating that Richard did "not live at [that] address." (Doc. No. 6). Nevertheless, a second warrant was issued on July 17, 2018 with instructions for personal or residential service on Richard at a federal prison in West Virginia. (Doc. No. 7). Thereafter, personal service on Richard was perfected at the federal prison on July 27, 2018. (Doc. No. 8).

{¶20} Our review of the record reflects that Richard pleaded guilty in a federal case on June 12, 2018 and was sentenced to 21 months in federal prison on June 15, 2018. (Doc. No. 129, Exs. B, C). Thus, and contrary to Richard's argument on appeal, we cannot say that the record supports that the State willfully refused to take the appropriate steps to determine Richard's location between April and July 2018.

{¶21} Moreover, we cannot say that the State intentionally caused a delay by failing to respond to Richard's IAD motion. "Although codified at R.C. 2963.30, the IAD is 'a congressionally sanctioned interstate compact * * * and thus is a federal law subject to federal construction.'" *State v. Wells*, 94 Ohio App.3d 48, 52

(10th Dist.1994), quoting *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401 (1985), and citing *Cuyler v. Adams*, 449 U.S. 433, 436-442, 101 S.Ct. 703 (1981).

{¶22} "The IAD outlines two procedures by which a prisoner against whom *a detainer has been lodged* may be transferred to the temporary custody of another state for disposition of charges pending there." (Emphasis added.) *State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, ¶ 8. "'One of these procedures may be invoked by the prisoner; the other by the prosecuting attorney of the receiving State.'" *Id.*, quoting *State. Cuyler*, 449 U.S. 433, 444, 101 S.Ct. 703 (1981).

{¶23} Under the prisoner-initiated procedure outlined in the statute, "a federal prisoner must be brought to trial within 180 days following the delivery of written notice to the appropriate trial court *and* prosecutor's office accompanied by" documentation outlined in Article III(a) of the IAD. (Emphasis added.) *State v. Barrett*, 191 Ohio App.3d 245, 2010-Ohio-5139, ¶ 10 (8th Dist.), citing R.C. 2963.30, Article III(a). Specifically, "Article III(b) requires the prisoner to send written notice requesting final disposition to the 'warden, commissioner of corrections or other official having custody of him.'" *Id.*, quoting R.C. 2963.30, Article III(b). This official is then required to forward the written notice and the accompanying documentation "to the appropriate prosecuting official and court by *registered or certified mail, return receipt requested.*" (Emphasis added.) R.C. 2963.30, Article III(b).

**{¶24}** Although this official "must promptly inform the *prisoner* of any detainer as well as the prisoner's rights in making a request for final disposition," there is *no* duty under the IAD "on the part of the state to promptly notify prisoners of pending indictments." (Emphasis added.) *Black* at ¶ 9; *State v. Wells*, 110 Ohio App.3d 275, 281 (10th Dist.1996). *See also State v. Kopietz*, 6th Dist. Lucas No. L-19-1037, 2019-Ohio-5277, ¶ 19 (declining "to impose an implied obligation on the state to file a detainer upon a defendant who is in custody of another state").

**{¶25}** "[T]he one-hundred-eighty-day time period set forth in R.C. 2963.30 * * * begins to run when a prisoner substantially complies with the requirements of the statute set forth in Article III(a) and (b) thereof." *State v. Mourey*, 64 Ohio St.3d 482, 485 (1992). "'"Substantial compliance" requires the defendant to do "everything that could be reasonably expected."'" *Barrett*, 191 Ohio App.3d 245, 2010-Ohio-5139, at ¶ 11, quoting *State v. Quinones*, 168 Ohio App.3d 425, 2006-Ohio-4096, ¶ 17 (8th Dist.), quoting *State v. Ferguson*, 41 Ohio App.3d 306, 311 (10th Dist.1987).

**{¶26}** "Under the prosecutor-initiated procedure outlined in the statute, the receiving state has 120 days after the prisoner's arrival in the state to bring the prisoner to trial." *Black* at ¶ 10, citing R.C. 2963.30, Article IV(c). Specifically, "[a]rticle IV applies when the prosecution files the detainer." *State v. Levy*, 8th Dist. Cuyahoga No. 83114, 2004-Ohio-4489, ¶ 36. *See also Black* at ¶ 10 ("To initiate

-13-

the procedure, the prosecuting official in the receiving state must make a written request for temporary custody to the 'appropriate authorities of the state in which the prisoner is incarcerated.'"), quoting R.C. 2963.30, Article IV(a). "When the prosecution files the detainer, the speedy trial begins to run after the inmate is returned to the requesting state." *Levy* at ¶ 36.

{¶27} Under either procedure, the IAD requires dismissal of criminal charges in three circumstances: (1) "if a trial is not held in the receiving state 'prior to the return of the prisoner to the original place of imprisonment'"; (2) "if the receiving state fails to accept temporary custody of the prisoner after filing a detainer" or (3) "[i]f a prisoner is not brought to trial within the time periods proscribed by Articles III and IV" of the IAD. *Black* at ¶ 11, quoting R.C. 2963.30, Article III(d), and citing Article IV(e); *Johnson*, 2016-Ohio-7036, at ¶ 35.

{¶28} To determine whether Article III or IV of the IAD are applicable to Richard's case, we must first determine whether the State lodged a detainer against Richard. *See State v. Hornsby*, 2d Dist. Montgomery No. 28322, 2020-Ohio-1526, ¶ 11. *See also Johnson* at ¶ 22. "Although the term 'detainer' is not defined in the IAD, the agreement, by its terms, makes the existence of a detainer a prerequisite to its applicability." *Wells*, 94 Ohio App.3d at 53, citing *United States v. Mauro*, 436 U.S. 340, 347-351, 98 S.Ct. 1834 (1978). *See also Johnson* at ¶ 24 ("The provisions

of the IAD are triggered when a prosecutor files a detainer with the institution currently holding the prisoner.").

> Given the means employed in Article III to achieve the IAD's purpose, the detainer requirement of the IAD is simply to ensure that prison officials in a "sending state" have in fact received official notice of criminal charges pending in another state against an inmate; it is not intended to impose technical requirements regarding the form of that notice, as such technical requirements would frustrate the very purpose of the agreement by rendering it inapplicable in many cases where prison officials have in fact been notified that charges are pending in another state against one of their inmates.

*Wells* at 53.

{¶29} "Further, the history of the IAD reveals that both the drafters of the agreement and the United States Congress had broad and general understandings of what constituted a 'detainer' for purposes of the IAD." *Id.* Generally, "a detainer is 'a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when [the] release of the prisoner is imminent.'" *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, ¶ 19, quoting *Carchman*, 473 U.S. at 719. *See also Black* at ¶ 5. However, the United States Supreme Court (referring to the legislative history of the IAD) additionally noted that "detainer may be defined as a warrant filed against a person already in custody with the purpose of insuring that he will be available to the authority which has placed the detainer." (Citation omitted.) *Carchman* at 727.

**{¶30}** Even if we construe the definition of a detainer in the most liberal sense in relation to the indictment against Richard or the warrant for his arrest, none of the provisions under Article III or IV of the IAD are applicable to Richard's case. First, assuming without deciding that a detainer was properly placed against Richard in this case (to ultimately determine whether the State intentionally caused a delay), the provisions of Article III are inapplicable to Richard's case because Richard failed to follow the necessary steps to substantially comply with the requirements of Article III to invoke the right to be brought to trial within 180 days.

**{¶31}** In this case, Richard sent a written notice on January 3, 2019 to *only* the Marion County Clerk of Courts by ordinary mail.[4]   (*See* Doc. No. 9). Importantly, the record reflects that Richard *did not* send his notice to the Marion County Prosecutor's Office.  And, because Richard did not send his notice to the Marion County Prosecutor's Office, he *did not* substantially comply with the requirements in the IAD.  *Accord Levy*, 2004-Ohio-4489, at ¶ 32-35 (concluding that Levy did not substantially comply with the requirements in the IAD since Levy mailed his request to only the Cuyahoga County Common Pleas Court clerk's office by ordinary mail).  Accordingly, Richard did not invoke the provisions of Article III of the IAD.  Thus, the provisions of Article III are not applicable to Richard's case.

---

[4] Richard sent a second written notice on April 25, 2019 to *only* the Marion County Clerk of Courts by ordinary mail.  (Doc. No. 16).

{¶32} Consequently, since Richard failed to invoke Article III of the IAD, Article IV applies to his case (assuming without deciding that a detainer was properly placed). *Accord Levy* at ¶ 36 ("Accordingly, we conclude Levy failed to invoke Article III(a) or (b); therefore, Article IV applies."). Moreover, since Richard was not transferred from custody in West Virginia to custody in Ohio, the State's time to try him *never* began to run.[5] *Accord Hornsby*, 2020-Ohio-1526, at ¶ 12 (concluding that "Hornsby did not demonstrate that dismissal was appropriate under Article IV [since] the State's time to try him never began to run, because he was not transferred from custody in Indiana into custody in Ohio").

{¶33} Nevertheless, there is no evidence in the record reflecting that the indictment or the warrant were served on the federal prison at which Richard was incarcerated, and neither presented a request that Richard be held so that he could be transferred into custody in Ohio for trial on the charges against him in Marion County. *Compare id.* at ¶ 13 ("Additionally, neither the indictment nor the warrant were served on Branchville Correctional Facility, and neither presented a request that Hornsby be held there so that he could later be transferred into custody in Ohio for trial on the charge against him here."). *See also Wells*, 94 Ohio App.3d at 54. "Neither the indictment nor the warrant, therefore, could have functioned as a detainer, because both failed to convey the request that is the defining characteristic

---

[5] Even though Richard asserts that he was brought to Ohio on June 17, 2019 under a detainer, this court cannot find any evidence in the record reflecting that assertion. (*See* Appellant's Brief at 1).

of a detainer." *Hornsby* at ¶ 13, citing *State v. Smith*, 4th Dist. Ross No. 18CA3627, 2018-Ohio-5020, ¶ 30.

**{¶34}** Furthermore, even though the State is under no obligation to lodge a detainer against a defendant who is incarcerated in another state, the State assumes some negligence in attempting to bring Richard to Ohio to face the charges in Marion County. (*See* Appellee's Brief at 8); *Kopietz*, 2019-Ohio-5277, ¶ 19. *See also Black*, 142 Ohio St.3d 332, 2015-Ohio-53, at ¶ 9; *Wells*, 110 Ohio App.3d at 281. Specifically, the State concedes that (notwithstanding our conclusion that Richard failed to substantially comply with the requirements of the IAD to invoke the provisions of Article III), the trial court ordered it on January 16, 2019 to respond to Richard's January 3, 2019 written notice, and that it failed to respond until April 2019. (Appellee's Brief at 8). (*See also* Doc. Nos. 10, 14).

**{¶35}** Nevertheless, instead of proceeding under the prosecutor-initiated provisions of the IAD, the State filed a writ of habeas corpus ad prosequendum on April 18, 2019 with the Federal Bureau of Prisons requesting Richard to be returned to the trial court for purposes of arraignment. (*See* Doc. Nos. 13, 14, 15). However, this court has previously held that a writ of habeas corpus ad prosequendum does not constitute a detainer as described by the IAD. *See State v. Dye*, 3d Dist. Crawford No. 3-92-47, 1993 WL 157728, *3-4 (May 14, 1993). *See also Mauro*, 436 U.S. 340, at syllabus.

{¶36} Therefore, based on the State's concession of some minor prosecutorial negligence, we conclude that such weighs in Richards' favor, if only somewhat, under the second factor. *See Irish*, 2019-Ohio-2765, at ¶ 35.

{¶37} Next, under the third factor, we consider Richard's assertion of his right to a speedy trial. "'The third factor addresses the timeliness and frequency of the defendant's assertions of his speedy-trial right.'" *Id.* at ¶ 36, quoting *State v. Rice*, 1st Dist. Hamilton No. C-150191, 2015-Ohio-5481, ¶ 27, citing *Barker*, 407 U.S. at 529. Here, the record reflects that Richard knew of the charges (at the latest) on July 27, 2018, when he was personally served with a copy of the indictment. (*See* Doc. No. 8). Yet, Richard failed to assert his right to a speedy trial until January 3, 2019, when he filed his first (defective) written notice attempting to invoke the provisions of Article III of the IAD. Even if the State properly lodged a detainer against Richard (and assuming that Richard's written notice was not defective), there is a five-month gap in time for which Richard bears some responsibility. *See Rice* at ¶ 27, citing *State v. Walker*, 10th Dist. Franklin No. 06AP-810, 2007-Ohio-4666, ¶ 31. Thus, we conclude that the third factor weighs in the State's favor.

{¶38} Finally, we consider the degree to which Richard was prejudiced by the delay. "In considering the prejudice suffered by a defendant, the Supreme Court of the United States has 'held that the inquiring court should assess prejudice "in light of the interests the speedy trial right was designed to protect."'" *Irish* at ¶ 38,

quoting *State v. McCain*, 9th Dist. Wayne No. 15AP0055, 2016-Ohio-4992, ¶ 18, quoting *Barker* at 532. The speedy-trial right was designed to "'[1] to prevent oppressive pretrial incarceration; [2] to minimize anxiety and concern of the accused; and [3] to limit the possibility that the defense will be impaired." *State v. Spencer*, 4th Dist. Scioto No. 15CA3718, 2017-Ohio-456, ¶ 36, quoting *Barker* at 532. "'""Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'"'" *Irish* at ¶ 38, quoting *State v. Stevens*, 3d Dist. Logan No. 8-14-09, 2014-Ohio-4875, ¶ 19, quoting *Doggett*, 505 U.S. at 654, quoting *Barker* at 532. "'Impairment of one's defense is also the most difficult form of prejudice to prove "because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'"'" *Id.*, quoting *Stevens* at ¶ 19, quoting *Doggett* at 655, quoting *Barker* at 532.

{¶39} Here, Richard does not allege that his defense was impaired by the delay. Rather, he contends that "the prosecution's negligence deprived [him] of the opportunity for concurrent terms, caused him anxiety while waiting in federal prison, and resulted in additional oppressive incarceration after his federal prison term expired." (Appellant's Brief at 16). As to Richard's oppressive-incarceration argument, we note that the first interest protected by the right a speedy trial considers *only* whether Richard was subject to oppressive *pretrial* incarceration. In

this case, Richard was incarcerated in federal prison in West Virginia during the preponderance of the timeframe relevant to Richard's speedy-trial claim. Consequently, Richard was not threatened with the prospect of oppressive *pretrial* incarceration since his liberty was already severely restrained. *Accord Irish* at ¶ 42.

{¶40} Furthermore, Richard's argument that he suffered prejudice because the State's delay cost him the possibility to serve the Marion County sentence concurrently with his federal sentence is likewise specious. In general, "'the theoretical and speculative loss of the opportunity for [a] defendant to serve the sentence on the pending charge concurrently with the sentence in another case' is insufficient to constitute substantial prejudice to the defendant." *McCain* at ¶ 19, quoting *Rice* at ¶ 32. *See also Spencer* at ¶ 37 ("Losing his opportunity to bargain for concurrent sentences is based upon speculation and is not sufficient to show prejudice; there is no constitutional or statutory right to be given concurrent sentences."), citing *State v. Jones*, 4th Dist. Ross No. 95CA2128, 1996 WL 312469, *2 (June 4, 1996) and *Rice* at ¶ 32.

{¶41} Finally, we further reject Richard's contention that he endured "significant anxiety" from the delay. (Appellant's Brief at 15). Richard's "blanket statement, without more, that he suffered anxiety caused by the delay is insufficient to show the type of prejudice required for a violation of constitutional speedy-trial rights." *Hubbard*, 2015-Ohio-646, at ¶ 23, citing *State v. Glass*, 10th Dist. Franklin

No. 10AP-558, 2011-Ohio-6287, ¶ 26 and *State v. Eicher*, 8th Dist. Cuyahoga No. 89161, 2007-Ohio-6813, ¶ 33. Altogether, because we conclude that Richard did not show any actual prejudice, the fourth factor weighs heavily in favor of the State. *See Irish* at ¶ 46.

{¶42} In sum, even though the first and second factors weigh slightly in Richard's favor, we conclude that the third and fourth factors weigh more heavily in favor of the State, outbalancing the first and second factors. Thus, after carefully considering the factors, we conclude that the delay in this case does not violate Richard's constitutional right to a speedy trial. Therefore, Richard's first assignment of error is overruled.

**Assignment of Error No. II**

**Appellant was unfairly prejudiced by the joinder for trial [sic] three separate incidents of alleged drug trafficking.**

{¶43} In his second assignment of error, Richard argues that the trial court erred by denying his motion to sever the (later amended) second superseding indictment because he was unfairly prejudiced by joinder of the separate drug offenses for purposes of trial. Specifically, Richard argues that "by presenting all three incidents together, the prosecution was able to gain an unfair advantage from the cumulative effect of all three allegations." (Appellant's Brief at 17). Further, Richard contends that the evidence related to the victims' overdoses does not constitute admissible evidence for purposes of Evid.R. 404(B)—that is, Richard

argues that those "facts are not sufficiently similar to provide any behavioral fingerprint that could be used to identify Richard as the supplier." (*Id.* at 17-18).

*Standard of Review*

{¶44} "Issues of joinder and severance are generally reviewed under an abuse of discretion standard." *State v. Plott*, 3d Dist. Seneca No. 13-15-39, 2017-Ohio-38, ¶ 52. An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶45} "However, a defendant's failure to renew his or her Crim.R. 14 motion for severance at the close of the State's case or at the close of all evidence waives all but plain error on appeal." *State v. Howard*, 3d Dist. Marion No. 9-10-50, 2011-Ohio-3524, ¶ 82. *See also State v. Muller*, 3d Dist. Defiance No. 4-11-09, 2012-Ohio-3530, ¶ 34; *State v. Kelly*, 5th Dist. Delaware No. 17 CAA 04 0023, 2018-Ohio-378 ¶ 63. "To demonstrate plain error, the defendant must demonstrate that the trial court deviated from a legal rule, the error was an obvious defect in the proceeding, and the error affected a substantial right." *Howard* at ¶ 83, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "The defendant must also demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors." *Id.*, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), citing *State v. Moreland*, 50 Ohio St.3d 58, 62 (1990). "We recognize plain error '"with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage

of justice.'"'" *Id.*, quoting *State v. Landrum*, 53 Ohio St.3d 107, 110 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

*Analysis*

**{¶46}** "In general, the law favors joining multiple offenses in a single trial if the offenses charged 'are of the same or similar character.'" *State v. Valentine*, 5th Dist. Fairfield No. 18 CA 27, 2019-Ohio-2243, ¶ 43, quoting *State v. Lott*, 51 Ohio St.3d 160, 163 (1990), citing *State v. Torres*, 66 Ohio St.2d 340 (1981). "Two or more offenses may be charged in the same indictment if they are of 'the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.'" *Id.*, quoting Crim.R. 8(A).

**{¶47}** "Where joinder is not appropriate under Crim.R. 8(A) because the offenses do not meet at least one of the four joinder requirements, the trial court should grant a motion to sever, even in the absence of prejudice." *Id.* at ¶ 24. "Whether charges were misjoined in a single indictment in contravention of Crim.R. 8(A) is an issue of law that this court reviews de novo." *State v. Jeffries*, 1st Dist. Hamilton C-170182, 2018-Ohio-2160, ¶ 51, citing *State v. Kennedy*, 1st Dist. Hamilton C-120337, 2013-Ohio-4221, ¶ 24. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion

No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

{¶48} "Nonetheless, if it appears that a criminal defendant would be prejudiced by such joinder, then the trial court is required to order separate trials." *Valentine* at ¶ 44, citing Crim.R. 14.

> To prevail on a motion to sever, a defendant has the burden of demonstrating that "(1) his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial."

*Plott*, 2017-Ohio-38, at ¶ 55, quoting *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992). "A defendant's claim of prejudice is negated when: (1) evidence of the other crimes would have been admissible as 'other acts' evidence under Evid.R. 404(B) or (2) the evidence of each crime joined at trial is simple and direct." *State v. Ahmed*, 8th Dist. Cuyahoga No. 84220, 2005-Ohio-2999, ¶ 22, citing *Lott* at 163, *Schaim* at 59, and *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991).

{¶49} "'Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."'" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). "'However, there are exceptions to the general rule:

"It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."'" *Bagley* at ¶ 56, quoting *May* at ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *Bagley* at ¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23.

{¶50} "'Under the second method, the "joinder" test, the state is merely required to show that evidence of each crime joined at trial is simple and direct.'" *Valentine*, 2019-Ohio-2243, at ¶ 47, quoting *Lott* 163. The Supreme Court of Ohio has unequivocally stated "that 'when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." *Id.*, quoting *Lott* at 163. "Evidence is 'simple and direct' if (1) the jury is capable of readily separating the proof required for each offense, (2) the evidence is unlikely to confuse jurors, (3) the evidence is straightforward, and (4) there is little danger that the jury would 'improperly consider testimony on one offense as corroborative of the other.'" (Citations omitted.) *Id.* at ¶ 48, quoting *State v. Wright*, 4th Dist. Jackson No. 16CA3, 2017-Ohio-8702, ¶ 52.

{¶51} "Courts have held that evidence of multiple offenses is 'simple and direct' where, for example, the offenses involved different victims, different

-26-

incidents or factual scenarios, and different witnesses." *Id.* at ¶ 49, citing *State v. Dantzler*, 10th Dist. Franklin Nos. 14AP-907 and 14AP-908, 2015-Ohio-3641, ¶ 23 (concluding that the defendant was not prejudiced by the joinder because "[t]he evidence relating to each incident was simple and direct: the incidents occurred separately, involved different victims, and different eyewitnesses independently identified defendant as the shooter at each incident") and *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224 and L-09-1225, 2010-Ohio-4202, ¶ 33 ("Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof.").

{¶52} "If either the 'other acts' test or the 'simple and direct' test is met, a defendant cannot establish prejudice from the joinder." *Id.* at ¶ 50. *See also Lott* at 163 ("Under the second method, the 'joinder' test, the state is not required to meet the stricter 'other acts' admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct.").

{¶53} Here, Richard's offenses were not misjoined in contravention of Crim.R. 8(A) as alleged. The offenses at issue in this case are part of a common scheme or plan. That is, the various acts at issue constituted a part of a common scheme or plan related to the sale of drugs. *Accord State v. Carpenter*, 3d Dist. Seneca No. 13-18-16, 2019-Ohio-58, ¶ 81.

-27-

{¶54} Turning to whether Richard was prejudiced by the joinder of the offenses, the record reveals (and Richard' concedes on appeal) that he failed to renew his Crim.R. 14 motion for severance at the close of the State's case or at the close of all evidence. (*See* Appellant's Brief at 19). Consequently, Richard waived all but plain error on appeal and Richard failed to demonstrate plain error in his argument. The evidence in the record of each crime is simple and direct, involving trafficking in drugs on certain days, corrupting multiple individuals with drugs on certain days, and causing the deaths of individuals as the proximate result of trafficking in drugs. *See Carpenter* at ¶ 82.

{¶55} Moreover, the trial court cautioned the jury to consider each count, and the evidence applicable to each count, separately. (*See* Aug. 17, 2020 Tr., Vol. V, at 802); *State v. Wilson*, 5th Dist. No. 16-CAA-08-0035, 2017-Ohio-5724, ¶ 53 ("'Courts have held that any prejudice that results from the joinder of offenses is minimized when a trial court cautions a jury before deliberations to consider each count, and the evidence applicable to each count separately, and to state its findings as to each count uninfluenced by its verdict on any other counts.'"), quoting *State v. Freeland*, 4th Dist. Ross No. 12CA003352, 2015-Ohio-3410, ¶ 16. *Accord Carpenter* at ¶ 84. "[W]e presume that the jury followed the [trial] court's instructions." *Valentine* at ¶ 57, citing *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 192. This presumption is bolstered by the jury's not-guilty

findings as to five of the counts that it considered. *See State v. Shook*, 3d Dist. Logan No. 8-14-01, 2014-Ohio-3987, ¶ 28 (concluding that "[t]he result of the trial seems to suggest that the testimony was simple and direct as the jury acquitted Shook on one of the counts").

{¶56} Because it is dispositive, we need address only the trial court's determination that joinder was appropriate under the simple-and-direct test. *Accord Valentine* at ¶ 55 ("While the state argues that the cases could be tried together under either test, there is no reason for us to look to the more stringent "other acts" test because the evidence here was simple and straightforward."). *See also Shook* at ¶ 28.

{¶57} For these reasons, Richard cannot demonstrate that there was an obvious defect in the proceedings or that the outcome of his trial would have been different. Accordingly, the trial court did not commit any error, let alone plain error, by denying Richard's motion for severance.

{¶58} Richard's second assignment of error is overruled.

**Assignment of Error No. III**

**Appellant's state and federal constitutional rights to due process were violated because the conviction in count seven for corrupting another with drugs was not supported by sufficient evidence.**

**Assignment of Error No. IV**

**The weight of evidence does not support a conviction on count seven for corrupting another with drugs.**

**{¶59}** In his third and fourth assignments of error, Richard argues that his that his corrupting-another-with-drugs conviction under Count Eight is based on insufficient evidence and is against the manifest weight of the evidence. In particular, in his third assignment of error, Richard argues that the State presented insufficient evidence that his corrupting-another-with-drugs conviction under Count Eight is based on insufficient evidence because the State presented insufficient evidence that he "*furnished* Thompson with the heroin that caused his overdose * * * ." (Emphasis added.) (Appellant's Brief at 20). In his fourth assignment of error, he specifically argues that the weight of the evidence shows that Aaron "Stanley" [("Stanley") w]as the drug supplier, not Richard * * * ." (*Id.* at 22).

*Standard of Review*

**{¶60}** Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Thus, we address each legal concept individually.

**{¶61}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly,

"[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶62} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard,

-31-

"[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

{¶63} We begin by addressing Richard's sufficiency-of-the-evidence argument as it relates to his corrupting-another-with-drugs conviction under Count Eight. The offense of corrupting another with drugs is codified under R.C. 2925.02 and provides, in relevant part:

> (A)  No person shall knowingly do any of the following:
>
> * * *
>
> (3)  By any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent.

R.C. 2925.02(A)(3).

{¶64} Because it is the only element that Richard challenges on appeal, we will address only the furnish element of the offense. Although, the term "furnish" is not defined by the Revised Code, the term was defined for the jury to mean to "provide, supply, or give access to." (Aug. 17, 2020 Tr., Vol. V, at 818). *Accord State v. Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423, ¶ 86. In other words, our sister appellate districts have concluded that, to be guilty of

corrupting another with drugs (by *furnishing* a controlled substance), it is of no consequence whether the controlled substance is sold or delivered directly to a victim, provided that the sale gave the victim *access* to the controlled substance. *See State v. Price*, 8th Dist. No. 107096, 2019-Ohio-1642, ¶ 51; *Patterson* at ¶ 86 ("It does not matter if the heroin was sold or delivered directly to [a third party], provided that the sale gave [the victim] access to it.").

{¶65} In support of his sufficiency-of-the-evidence challenge, Richard argues that a rational trier of fact could not have found that he was involved in the drug transaction involving Thompson because "there was no evidence whatsoever that Richard ever provided Thompson with any drugs." (Appellant's Brief at 20). The record belies Richard's argument. Indeed, viewing the evidence in a light most favorable to the prosecution, Richards's corrupting-another-with-drugs conviction under Count Eight is based on sufficient evidence.

{¶66} Importantly, the State may establish the elements of a crime with direct or circumstantial evidence. *State v. Miller*, 8th Dist. Cuyahoga No. 103591, 2016-Ohio-7606, ¶ 60, citing *State v. Durr,* 58 Ohio St.3d 86, 92 (1991). "'Circumstantial evidence' is the 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning or other facts.'" *State v. Lawwill*, 12th Dist. Butler No. CA2007-01-014, 2008-Ohio-3592, ¶ 12, quoting *State v. Wells*, 12th Dist. Warren No. CA2006-02-029, 2007-Ohio-1362, ¶ 11, citing *State v.*

*Griesheimer*, 10th Dist. Franklin No. 05AP-1039, 2007-Ohio-837, ¶ 26. Circumstantial evidence has no less probative value than direct evidence. *Griesheimer* at ¶ 26, citing *Jenks* at paragraph one of the syllabus. *See also State v. Heinish*, 50 Ohio St.3d 231, 238 (1990) ("This court has long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt."); *Miller* at ¶ 61 (stating that "circumstantial evidence alone is sufficient to support a conviction"), citing *State v. Coleman*, 8th Dist. Cuyahoga No. 102966, 2016-Ohio-297, ¶ 22. "'[A]ll that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Miller* at ¶ 61, quoting *Jenks* at 272. "'"Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence."'" *Id.*, quoting *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, ¶ 9, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6 (1960).

{¶67} Accordingly, based on our review of the record, we conclude the State presented sufficient (circumstantial) evidence at trial that Richard knew that he gave Thompson access to heroin. *Compare Price*, 2019-Ohio-1642, at ¶ 51 (concluding that "[t]he state presented sufficient evidence that showed Price knew he was giving the victim access to heroin and fentanyl by selling it to [a third party]"). In

particular, at trial, the State presented the testimony of Stanley, who testified that he contacted Richard on October 17, 2017 to "acquire heroin" and to "make an introduction" between Richard and Thompson. (Aug. 14, 2020 Tr., Vol. IV, at 586-587). *See Price* at ¶ 50, citing *Patterson* at ¶ 86, *State v. Potee*, 12th Dist. Clermont No. CA2016-06-045, 2017-Ohio-2926, ¶ 31, and *State v. Jones*, 5th Dist. Licking No. 05 CA 59, 2006-Ohio-916, ¶ 46. He clarified that "[w]henever [he] spoke to Mr. Richard, [he] was calling to acquire heroin" and "that's what [he] was wanting then." (Aug. 14, 2020 Tr., Vol. IV, at 586). Stanley further testified that Richard appeared at his apartment later that evening and that he introduced Richard to Thompson. (*Id.* at 595, 605). After introducing the two men, Stanley "bowed out and went to the restroom" for "a few minutes." (*Id.* at 605-606). Thereafter, "Richard said he had to leave." (*Id.* at 606).

{¶68} Furthermore, the State presented surveillance-photo evidence corroborating that Richard and Thompson were at Stanley's apartment during the same time period. Specifically, State's Exhibits 36 and 48 depict Thompson arriving at Stanley's apartment at 6:07 p.m. and departing Stanley's apartment at 7:57 p.m., respectively. Likewise, State's Exhibit 43 and depicts Richard entering Stanley's apartment building at 7:34 p.m. and State's Exhibits 46 and 47 depict Richard departing the building at 7:44 p.m. (*See* State's Exs. 40-43, 45-47).

{¶69} The State also presented evidence that Thompson was found unconscious on the floor his bedroom by his parents at approximately 10:00 p.m. on October 17, 2017. (Aug. 13, 2020 Tr., Vol. III, at 520, 533). According to Cobern Thompson ("Cobern"), Thompson's father, "a needle [was] laying on the floor" next to Thompson. (*Id.* at 521). Cobern further testified that Thompson left the residence that evening at approximately 5:45 p.m. and returned at approximately 8:00 p.m. (*Id.* at 521-522). Thompson later died as a result of "[a]cute heroin toxicity." (Aug. 12, 2020 Tr., Vol. II, at 314). (*See also* State's Ex. 33). Based on the totality of this evidence, we conclude that a rational trier of fact could have found that Richard furnished Thompson heroin. Consequently, Richard's corrupting-another-with-drugs conviction under Count Eight is based on sufficient evidence.

{¶70} Having concluded that Richard's corrupting-another-with-drugs conviction is based on sufficient evidence, we next address Richard's argument that his corrupting-another-with-drugs conviction under Count Eight is against the manifest weight of the evidence.

*Manifest Weight of the Evidence*

{¶71} Similar to his sufficiency-of-the-evidence argument, Richard argues that his corrupting-another-with-drugs conviction under Count Eight is against the manifest weight of the evidence because the trier of fact lost its way in concluding that *he* furnished Thompson heroin. In particular, Richard argues that the evidence

identifying him as the person who furnished Thompson heroin is outweighed by the evidence that Stanley was the person who furnished Thompson heroin.

**{¶72}** In support of his argument (that his corrupting-another-with-drugs conviction under Count Eight is against the manifest weight of the evidence), Richard argues that evidence that (1) "Stanley's fingerprints were, literally, all over the drugs that Thompson ingested shortly before overdosing"; (2) "Stanley had been providing Thompson with drugs during the days leading up to the overdose"; and (3) "Stanley was unable to provide any evidence that Richard actually provided Thompson with any drugs or even talked about drugs with Thompson" weighs against the State's evidence that Richard furnished Thompson heroin. (Appellant's Brief at 21-22).

**{¶73}** However, based on our review of the record, we conclude that Richard's evidence does not outweigh the conclusion that he furnished Thompson heroin. Importantly, Richard overlooks the meaning of the term "furnish" as we addressed in our sufficiency-of-the-evidence analysis. Accordingly, the relevant inquiry is whether the weight of the evidence demonstrates that Richard knew that he gave Thompson access to heroin.

**{¶74}** Notwithstanding Stanley's weak credibility, the jury was able to infer from the totality of the evidence presented at trial that Richard furnished Thompson heroin. "A jury can make reasonable inferences from the evidence." *State v. Knight*,

10th Dist. Franklin No. 16AP-288, 2016-Ohio-8134, ¶ 26. "'It is permissible for a jury to draw inferences from the facts presented to them.'" *Id.*, quoting *State v. Sanders*, 6th Dist. Lucas No. L-96-379, 1998 WL 78787, *3 (Feb. 13, 1998), citing *State v. Palmer*, 80 Ohio St.3d 543, 561 (1997). "'The weight given to an inference is a question for the trier of fact and will not be disturbed unless it is such that reasonable minds could not reach such a conclusion.'" *Id.*, quoting *Sanders* at *3, citing *Palmer* at paragraph four of the syllabus. Based on our discussion of the sufficiency-of-the-evidence supporting that Richard furnished Thompson heroin, the jury could infer that Richard knew that he gave Thompson access to heroin.

{¶75} Indeed, the jury did not consider Richard's evidence in a vacuum—rather, the jury weighed Richard's evidence suggesting that Stanley furnished Thompson heroin with the testimony of the State's witnesses and the surveillance-photo evidence. *See State v. Campbell*, 2d Dist. Montgomery No. 26575, 2016-Ohio-598, ¶ 13. Because the surveillance-photo evidence corroborates that Richard and Thompson were at Stanley's apartment during the same time period (and that same evidence demonstrates that Richard was at Stanley's apartment for only a brief time), it was permissible for the jury to infer a link between Richard and Thompson and to infer that a drug transaction occurred between the men. *See State v. Wintermeyer*, 10th Dist. Franklin No. 16AP-381, 2017-Ohio-5521, ¶ 26 (noting that

a brief visit to a residence without can be indicative of the consummation of a drug transaction").

{¶76} Based on the evidence supporting the inference that Richard knew that he gave Thompson access to heroin, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that Richard's corrupting-another-with-drugs conviction under Count Eight must be reversed and a new trial ordered. Therefore, Richard's corrupting-another-with-drugs conviction under Count Eight is not against the manifest weight of the evidence.

{¶77} Richard's third and fourth assignments of error are overruled.

### Assignment of Error No. V

**The sentencing entry improperly imposed mandatory prison sentences because the prison sentences were not imposed as mandatory during the sentencing hearing.**

{¶78} In his fifth assignment of error, Richard argues that the trial court erred by imposing mandatory prison terms in its sentencing entry as to his corrupting-another-with-drugs convictions when it "failed to impose mandatory prison terms at the sentencing hearing" as to those convictions. (Appellant's Brief at 22). Richard contends that "[t]his Court should order the trial court to correct the entry nunc pro tunc to reflect the non-mandatory prison terms that were actually imposed." (*Id.*).

*Standard of Review*

**{¶79}** Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

**{¶80}** Under R.C. 2929.19(B)(2)(a), "if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall * * * [i]mpose a stated prison term and, if the court imposes a mandatory prison term, notify the offender that the prison term is a mandatory prison term." "The trial court is also required by R.C. 2929.19(B)(2)(b) to include this information in the sentencing entry." *State v. Stevens*, 9th Dist. Summit No. 29131, 2019-Ohio-2808, ¶ 10. "However, R.C. 2929.19(B)(7) further provides that '[t]he failure of the court to notify the offender that a prison term is a mandatory prison term * * * or to include in the sentencing entry any information required by [R.C. 2929.19(B)(2)(b)] does not affect the validity of the imposed sentence or sentences.'" *Id.*, quoting R.C.

2929.9(B)(7). *See also State v. Dyer*, 6th Dist. Lucas No. L-17-1258, 2019-Ohio-1558, ¶ 17, citing *State v. Vancleve*, 12th Dist. Clermont No. CA2016-06-039, 2016-Ohio-7546, ¶ 18.

{¶81} In this case, as second-degree felonies, Richard's corrupting-another-with-drugs convictions carry *mandatory* sanctions of two-years to eight-years of imprisonment. R.C. 2925.02(C)(1)(a) (instructing that "the court shall impose as a mandatory prison term a second degree felony mandatory prison term"); 2929.13(F)(5); 2929.14(A)(2)(b). Because the trial court sentenced Richard to five years in prison as to Count Five and seven years in prison as to Count Eight, the trial court's sentences fall within the statutory ranges. *See State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 31. Thus, even though the trial court did not inform Richard at sentencing that his prison terms were mandatory, Richard's sentence is not contrary to law. *Accord Dyer* at ¶ 17. *See also State v. Ware*, 141 Ohio St.3d 160, 2014-Ohio-5201, ¶ 17-19.

{¶82} Richard's fifth assignment of error is overruled.

{¶83} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

**Judgment Affirmed**

**MILLER and SHAW, J.J., concur.**

**/jlr**